# JACKSON *v.* BANK.

## *(Nashville.    January  5,  1893.)*

1. BANKS AND BANKING.    *Acceptance of check.*   *Proof of.*

   Acceptance by drawee bank of check drawn upon it by its customer, payable to the order of a particular person, is sufficiently proved in suit upon the check by the payee against the bank, where it appears that the bank paid the check upon its presentment and indorsement by an unauthorized person, and charged the amount to the account of the drawer, who had sufficient funds on deposit to meet it, and who afterwards lifted the check in settlement with bank.

   Case cited and approved: Pickle *v.* Muse, 88 Tenn., 380.

   Cited as disapproved: 94 U. S., 343.

2. SAME.    *Duty of bank in reference to payment of checks.*

   The drawee bank, having accepted, or being under obligation to accept, its customer's check drawn payable to the order of a particular person, is not discharged from liability to the payee, unless it has paid the check to him or upon his genuine indorsement.    In this matter the bank acts at its peril.    The possession of such check by a third person affords no presumption of authority in him to indorse it for the payee.    Authority to indorse is not implied from authority to receive such check for the payee.

   Cases cited and approved: Pickle *v.* Muse, 4 Pickle, 380; 46 Mo., 186.

3. SAME.    *Drummer has no authority to indorse or collect check received for his employer.*

   A drummer employed to sell and take orders for goods, to collect accounts, and to receive money or checks payable to his principal, is not authorized, without more, to indorse his principal's name on such checks and collect them.    Payment to the drummer of such checks

upon his indorsement of his principal's name does not protect the bank from liability to the payee.

---

FROM WARREN.

---

Appeal from Chancery Court of Warren County. W. S. BEARDEN, Ch.

T. C. LIND and SMITH & DICKINSON for Jackson, Mathews & Harris.

MURRAY & FAIRBANKS for Bank.

J. H. HOLMAN, Sp. J. The complainants were wholesale grocery merchants in the city of Nashville, and had in their employ, as a traveling salesman or drummer, one Gibson. Gibson's duty, under his employment, was to travel through the country, take orders from retail merchants for goods, and collect the bills as they became due.

For complainants, Gibson sold a bill of goods, amounting to $228.90, to J. J. Meadows, of Warren County. On October 12, 1891, before Meadows' bill became due, and while Gibson was still in the service of complainants, he proposed to Meadows that, if he would then pay the bill, he would be allowed a discount of, two per cent. To this Meadows agreed, and gave to Gibson his check on

the defendant for $224.39, payable to the order of Jackson, Mathews & Harris. In the face of the check was inserted the statement that it was "in full of account to date."

Upon the back of the check Gibson indorsed the names of complainants, "Jackson, Mathews & Harris, by Gibson," and presented it to the defendant bank, where it was paid to him by the cashier, and charged against the deposit account of Meadows. Gibson failed to pay over or account to complainants for this money.

Complainants, having learned that Gibson had collected other money due them, and failed to account for it, ordered him in, and discharged him. Gibson absconded. Subsequently, complainants sent to J. J. Meadows a statement of his account, requesting payment. Meadows replied that he had paid the account to Gibson by giving him a check on the defendant bank, and had settled with the bank, and took up the check. Complainants demanded of defendant payment to them of the check, which was refused.

Complainants filed their bill to hold the bank liable, and to recover the amount of the check, alleging that Gibson had no right to indorse complainants' name, and that the payment of the check to him was unauthorized.

The defendant answered, stating, in substance, that Gibson was authorized to indorse complainants' name to checks and secure the money thereon; that, if not expressly empowered, he was by implication

authorized so to do; that Gibson, while in com-
plainants' service, had frequently received checks
payable to complainants, indorsed complainants'
name, and secured the money thereon, and that
these acts of Gibson were known to and had been
ratified by the complainants; that they were es-
topped from denying his authority; and that it was
inequitable for complainants to undertake to · visit
the consequences of their own negligence and mis-
placed confidence upon respondent.

The Chancellor was of opinion that it would be
inequitable to visit the loss of the Meadows check
upon the defendant, and dismissed the bill.   Com-
plainants have appealed.

In the brief of counsel for the defendant it is
insisted that there is no such privity between the
complainants and the defendant as will authorize
the bringing of this suit; that where a check is
made payable to the order of one person, and, upon
the faith of a forged indorsement, the bank pays
to another, this is not such an acceptance by the
bank as will make it liable to the payee, because
the bank did not accept the check for the payee,
nor promise him to pay it, but, on the contrary,
refused to do so.   To sustain this position, the case
of *Bank* v. *Whitman*, 94 U. S. R., 343, is referred
to.   It is true that the Court, in that case, held
that a payment to a · stranger upon an unauthorized
indorsement does not operate as an acceptance of
the check so as to authorize an action by the real
owner to recover its amount as upon an accepted

check. But the case of *Bank* v. *Whitman*, on this point, has been expressly dissented from by this Court, and we do not now regard this as an open question in this State.

In the case of *Pickle* v. *Muse*, 4 Pickle, 380, it was decided, in the opinion of a majority of the Court, that acceptance of a bank check, and promise to pay it in accordance with its directions, will be inferred where the drawee bank receives and retains the check, and charges it to the account of the drawer, who had sufficient funds on deposit to meet it, and subsequently lifted the check on settlement with the bank, although the check may have been presented to the bank by, and the money paid on it to, an unauthorized person.

All the members of the complainants' firm testify that Gibson had not been empowered to indorse the firm's name on checks received in payment for goods.

Several drummers were examined as witnesses for defendant, to prove, and a majority of them say, with some qualification, that it is the usage and custom of traveling salesmen and drummers who are empowered to collect and receipt bills and accounts, to indorse the name of their principals to checks received in payment for goods, and it is insisted that by implication Gibson was authorized to indorse complainants' name to the check, and receive the money. We do not think this usage or custom sufficiently proven, nor do we intimate an opinion that such a power can be inferred from

usage or by implication. A person cannot, by proof, establish a usage or custom which, in his own interest, contravenes the established commercial law. *Vermilye* v. *Adams Express Company*, 21 Wall., 139.

No authority will be implied from an express authority. Whatever powers are strictly necessary to the effectual exercise of the express powers will be conceded to the agent by implication. In order, therefore, that the authority to make or draw, accept and indorse commercial paper as the agent of another may be implied from some other express authority, it must be shown to be strictly necessary to the complete execution of the express power. The rule is strictly enforced that the authority to execute and indorse bills and notes as agent, will not be implied from an express authority to transact some other business, unless it is *absolutely* necessary to the exercise of express authority. Tiedeman on Commercial Paper, Sec. 77. Possession of a check payable to order, by one claiming to be agent of the payee, is not *prima facie* proof of authority to demand payment in the name of the true owner. *Ib.*, 312. A bank is obliged by custom to honor checks payable to order, and pays them at its peril to any other than the person to whose order they are made payable. *Ib.*, Sec. 431. It must see that the check is paid to the payee therein named, upon his genuine indorsement, or it will remain responsible. *Pickle* v. *Muse*, 4 Pickle, 380.

An authority to receive checks, in lieu of cash, in payment of bills placed in the hands of an agent for collection, does not authorize the agent to indorse and collect the checks. *Graham* v. *U. S. Savings Institution*, 46 Mo., 186; 1 Wait's Act. & Def., p. 284; 1 Daniel on Neg. Inst., Sec. 294.

The indorsement of the check was not a necessary incident to the collection of accounts. *Graham* v. *U. S. Sav. Institution*, 46 Mo., 186.

It follows that a drummer or commercial traveler, employed to sell and take orders for goods, to collect accounts, and receive money and checks payable to the order of his principal, is not, by implication, authorized to indorse such principal's name to such checks.

No equitable considerations can be invoked to soften seeming hardships in the enforcement of the laws and rules fixing liability on persons handling commercial paper. These laws are the growth of ages and the result of experience, having their origin in necessity. The inflexibility of these rules may occasionally make them seem severe, but in them is found general security.

The decree of the Chancellor is reversed, and a decree in favor of complainants against the defendant will be entered here for the amount of the Meadows check, with interest from date of filing the bill, and the costs.