LONIER v. ANN ARBOR SAVINGS BANK.

1. PRINCIPAL AND AGENT — IMPLIED AUTHORITY — BILLS AND NOTES—INDORSEMENT.

A traveling salesman having authority to collect accounts has no authority thereby to take a note in payment of an account and negotiate the paper at a bank by indorsing his employers' names.

2. SAME—NEGOTIABLE INSTRUMENTS—TROVER AND CONVERSION.

In trover for the conversion of a promissory note claimed to belong to plaintiffs whose salesman indorsed their names and negotiated the paper at a bank, the case should be submitted to a jury upon testimony of defendant's witnesses that the paper was not discounted by the bank, but a loan was made on it to the maker direct; it also appearing that the cashier of the bank supposed he was dealing with one of the plaintiffs instead of their salesman.

Error to Washtenaw; Kinne, J.   Submitted April 8, 1910.   (Docket No. 37.)   Decided September 27, 1910.

Trover by Louis Lonier and William J. Hoffer, copartners as Lonier & Hoffer, against the Ann Arbor Savings Bank.   A judgment for defendant on a verdict directed by the court is reviewed by plaintiffs on writ of error.   Reversed.

*A. F. & F. M. Freeman,* for appellants.

*B. M. Thompson* and *Arthur Brown,* for appellee.

Moore, J.   This is an action of trover against the defendant for the unlawful conversion of a promissory note in which the plaintiffs were named as payees, which, it is claimed by them, was unlawfully indorsed by their traveling salesman and collector.   The case has been here once before and is reported in 153 Mich. 253 (116 N. W. 1088). A reading of the opinion then filed will make a long statement of facts unnecessary at this time.

Upon the second trial, there was less inconsistency in the testimony of Mr. Heusel than upon the first.   It is the claim of defendant that, upon this trial, there was no inconsistency in his testimony.   Upon the second trial, the cashier of the bank was sworn as a witness.   He testified in substance that the loan was made to Mr. Heusel.   In addition to this he testified in part as follows:

"I wrote the note that was made that day.   After it was written I handed it to Samuel Heusel.   He stepped over to the other gentleman at the customer's desk on the south side of the bank, and in the meantime I went to the teller's cage and got the money, and, when I came back, the note was there, and I also canceled the $500 note, and put it with the money in front of Mr. Heusel.   He took the note itself, and paid the currency over to this man.   I cannot recollect that I had any conversation with this other man."

On the cross-examination he testified in part as follows:

"* * * I said that Mr. Heusel came down to the bank and wanted some money, and he stated that he had a bill to pay Lonier & Hoffer.   He had money enough to pay $400 on the $590 note.   He said he wanted to borrow $367.29.   That was the amount he owed Lonier & Hoffer as I understood it at that time, and he wanted to get money enough to pay that.   He said, 'I want to borrow this money from the bank.'

"Q. Why did you write the name of Lonier & Hoffer in that note?

"*A.* I wrote it in there.  In the first place, I took a note for $190 in Lonier & Hoffer—

"*Q.* That is on the other matter?

"*A.* And, that note being in my presence and the bill before me for $367.29, I wrote the name of Lonier & Hoffer in there, and handed this note back to Mr. Heusel, and I supposed at the time that this man was a member of that firm—he procured that indorsement, they took it away from my desk.  I did not.  Mr. Heusel brought it back to me with the indorsement on.

"*Q.* You wrote that note up then just as Mr. Heusel told you to, to Lonier & Hoffer, didn't you?  You wrote the note?

"*A.* I wrote the note.

"*Q.* And you followed his directions, saying that it was to pay a bill of Lonier & Hoffer, and this note was to run to Lonier & Hoffer?

"*A.* I don't know as he said that.

"*Q.* He must have said it, or you would not have written it.  You did not know Lonier & Hoffer unless Mr. Heusel told you who they were.

"*A.* I did not know this man.  I had known of the name of Lonier & Hoffer before.  I don't think Heusel stated, 'This is to pay this bill,' and I drew the note in favor of Lonier & Hoffer.  I probably wrote the name of Lonier & Hoffer more to show that Sam Heusel had paid that bill than for any other reason.  I don't think Heusel instructed me to write it in.  I knew what to write because I had the old note before me.  I had the bill before me, and I supposed this man whose indorsement he secured was a member of the firm.

"*Q.* So that, when he indorsed, you would have a genuine indorsement?

"*A.* I did not care anything about an indorsement.  I made the loan to Mr. Heusel.  Yes, sir; it is true that I knew the minute I wrote the name of Lonier & Hoffer in the note I would have to have the indorsement of Lonier & Hoffer.  The maker procured the indorsement, and I did not go any further.  I supposed that it was Mr. Hoffer standing there.  I thought I was going to get his genuine indorsement.  I handed the note to Heusel, and he procured the indorsement.  It seemed they talked the matter over before.  No, sir; if the note was to run to the Ann Arbor Savings Bank, it would not have Lonier & Hoffer's name.

"*Q.* So you handed him the note then for the purpose of getting Lonier & Hoffer's signature ?

"*A.* And for himself to sign. We got the signature. I did not ask it because Mr. Heusel got this indorsement himself. I did suppose it to be correct. I think it has turned out that this was not Hoffer, but Donaldson. No; this man (pointing to Mr. Hoffer) is not the man who was there. No; Mr. Hoffer is not the man who stood there at all. It has turned out that it was Donaldson. I simply thought that, if the maker of the note procured the indorsement of the payee, I would look no further. If he was satisfied that was an indorsement of the paper, I certainly was. I presume I became satisfied that I had the indorsement of Lonier & Hoffer. Yes, sir; I have taken thousands of notes in behalf of the Ann Arbor Savings Bank; not always when taking such do I make the bank payee in the note. Yes; sometimes I make somebody else. They are required to be indorsed. Sometimes we have an indorser. No, sir; if Sam Heusel comes in and asks for a loan, I don't put somebody's else name in it. Yes, sir; I put the Ann Arbor Savings Bank in as payee. That is the universal custom except when he offers an indorsement."

At the conclusion of the case a motion was made to direct a verdict for defendant. In disposing of the motion the judge stated, among other things, as follows:

" There are two propositions that it seems to me ought to control it. The testimony is undisputed that the agent here of the plaintiff, Mr. Donaldson, had full authority to sell goods, the property of the plaintiffs, and to make collections, and, as I remember the testimony in this particular case as far as this particular bill is concerned, owing by Mr. Heusel, the matter was placed in his hands with full authority to collect. It seems to me that under those circumstances the law of agency must be that he would have the right to negotiate this paper even if it had been given by Mr. Heusel to the agent. The agent would be justified in taking that to the bank and having it discounted. It seems to me that must be the law as to implied authority in the absence of any knowledge coming to the bank of any restrictions upon his powers. It seems to me that would be the controlling law in this case, and I so suggested, but the Supreme Court did not pass upon that. But there seemed to be on the other trial some in-

consistency in the testimony of the plaintiffs as produced by Mr. Heusel, and the testimony of the cashier was not offered on the other trial. Now, the testimony of Mr. Heusel is produced, and it is entirely consistent. His statement is that this was a loan made by the bank to him, to nobody else, that this note was not discounted by the bank. There is no dispute about that. And the cashier is now introduced whose testimony is also uncontradicted and undisputed that this was a loan made by the bank to Mr. Heusel and nobody else, that they did not discount this paper"—and thereupon directed a verdict for defendant.

As appears in the former opinion, it was claimed by plaintiffs that, while their traveling salesman had authority to make collections, he had no authority to indorse and discount paper for them. We think it cannot be said that, because he had authority to make collections, this gave him authority, by implication or otherwise, to indorse the names of his employers to notes, nor to negotiate notes given to them.

As to the second proposition, it is true the cashier testified the loan was made to Mr. Heusel, but he also testified that the payees named in the note were the plaintiffs, and that he supposed when Mr. Donaldson indorsed the note that it was in fact Mr. Hoffer, one of the plaintiffs. This, taken with all the other testimony taken in the case, left the case where it could not be disposed of as a matter of law.

Judgment is reversed, and new trial ordered.

McALVAY, BROOKE, BLAIR, and STONE, JJ., concurred.