[S. F. No. 8070. In Bank.—May 7, 1919.]

# ARCADE REALTY COMPANY, Appellant, v. THE BANK OF COMMERCE, Respondent.

[1] PRINCIPAL AND AGENT—AUTHORITY TO COLLECT RENTS—PAYMENT IN NEGOTIABLE PAPER—AUTHORITY TO INDORSE NOT IMPLIED.—Authority to collect rents does not imply authority to indorse negotiable paper received in payment.

[2] ID.—INDORSEMENT OF NEGOTIABLE PAPER — IMPLIED AUTHORITY.— The authority of an agent to indorse negotiable paper is a very responsible power, not lightly to be presumed or implied.

[3] ID.—TEST OF AUTHORITY.—The power of an agent to indorse commercial paper for his principal must be a necessary implication from an express authority conferred upon such agent.

[4] ID.—COLLECTION AND TRANSMISSION OF RENTALS — AUTHORITY TO INDORSE CHECKS.—Where an agent had authority to deposit all rents collected by him in his personal account, for the purpose of remitting the same to his principal by his personal check, such authority carried with it the power essential to that course of business, namely, the indorsement for deposit of checks made payable to the principal where such were collected.

APPEAL from a judgment of the Superior Court of Alameda County. Wm. H. Donahue, Judge. Affirmed.

The facts are stated in the opinion of the court.

Ostrander, Clark & Carey for Appellant.

Gibson & Woolner and Henshaw, Black & Goldberg for Respondent.

WILBUR, J.—This action was brought by the Arcade Realty Company against the defendant bank to recover $2,650 paid by defendant upon checks drawn in favor of the Arcade Realty Company by C. W. Phillips upon the defendant bank. Phillips assigned his claims thereon against the bank to the plaintiff. The question involved in the case is the authority of one A. W. Clement to indorse such checks on behalf of the plaintiff. Judgment was rendered in favor of the defendant, upholding the authority of Clement to make such indorsements, and plaintiff appeals. Clement was the appellant's

agent for the collection of the rents from its tenants in appellant's business block in Oakland.   **[1]**   Appellant relies upon the well-settled rule that authority to collect does not imply authority to indorse negotiable paper received in payment, and upon the further well-established rule that the authority of an agent to indorse negotiable paper is a very responsible power, not lightly to be presumed or implied.   **[2]**   There is no doubt as to the correctness of these rules.   (See Daniel on Negotiable Instruments, 6th ed., secs. 292–294, 296; *Hamilton Nat. Bank* v. *Nye,* 37 Ind. App. 464, [117 Am. St. Rep. 333, 77 N. E. 295]; *Lonier* v. *Ann Arbor Sav. Bank,* 162 Mich. 541, [127 N. W. 685]; *National Fence Machine Co.* v. *Highleyman,* 71 Kan. 347, [80 Pac. 568]; *Jackson* v. *National Bank of McMinnville,* 92 Tenn. 154, [36 Am. St. Rep. 81, 18 L. R. A. 663, 20 S. W. 802]; Tiedman on Commercial Paper, sec. 77; *Jackson Paper Mfg. Co.* v. *Commercial Nat. Bank,* 199 Ill. 151, [93 Am. St. Rep. 113, 59 L. R. A. 657, 65 N. E. 136].)   As these rules are conceded to be correct, and as there is no evidence of an express authorization to Clement to indorse these checks, it will be necessary to state the facts more in detail for the purpose of disclosing the scope of Clement's agency.   It will appear therefrom that the agent was given and exercised far more power than a mere collector.   Clement, as the agent of appellant, for some years had collected the rents from the tenants of appellant's building, had deposited the moneys or checks received, in his own bank account to his personal credit, and had remitted such rentals to appellant in San Francisco, by a check drawn against such personal account.   The rents of the Hotel Arcade, however, were paid by Phillips direct to appellant by his personal check until February, 1912.   Phillips' rental was one thousand dollars monthly under a ten-year lease. Phillips, however, failed to pay promptly under this arrangement, and in order to facilitate collection the appellant directed Clement to collect such rentals.   Beginning February 26, 1912, Clement collected a check in favor of the Arcade Realty Company and mailed the same to appellant.   Thereafter Clement collected the sixty-four checks in issue at intervals until May 29, 1913.   Each check was indorsed by him as follows: "Arcade Realty Company by A. W. Clement, Agent, A. W. Clement," and deposited in his personal account either in the Union Savings Bank of Oakland, or the

Oakland Bank of Savings, Oakland. The checks were paid by the respondent, the drawee bank, in due course through the clearing-house. Clement remitted these rents and others collected by him for rent by his personal check as formerly, together with his accounts of rentals collected. In June, 1913, appellant discovered that Clement had remitted $2,650, the amount involved here, less than he had collected up to that date. Nevertheless the appellant did nothing more about the matter than to instruct Clement thereafter to remit the Phillips' checks direct to it, a direction which Clement carried out. On Clement's death about seven months later, the appellant discovered that Clement during the period when he was depositing the Phillips rent to his account had been making the indorsements in question, for such purpose. In addition to Clement's authority to collect rents, the correspondence shows that he was authorized to act as the general agent of the appellant for leasing, care, and repair of the building. It should be observed that we are not dealing with a general authority to indorse negotiable paper, but rather with the power necessary to deposit checks on local banks in another local bank for collection through the clearing-house, for the purpose of transmitting the proceeds to the principal in a near-by city. The appellant on receiving from month to month the personal check of its agent in satisfaction of rentals collected, must have been aware of the fact that Clement was depositing all rents in his own personal account, and thus by implication must have approved such deposit. The conclusion cannot be escaped in this case that the authority of the agent included the power to deposit money or paper collected to his own account. That is exactly what was done with the checks here in question. They were deposited to his own account and the indorsements were made solely for the purpose of accomplishing such deposit. It may well be that indorsements for any other purpose would have been unauthorized. But when the principal permitted its agent to deposit the collections to his personal account, to be transmitted by his personal check, it is a fair if not in fact a necessary inference that he had the authority to make such indorsements as were necessary to do this. Rents in large amounts are not habitually paid in money, but by check. The principal could hardly have assumed that such paper was all drawn to the order of the agent. The tenants would not naturally so draw

their checks, but to the order of the landlord. The appellant receiving all its rentals by the agent's personal check cannot claim that it did not know that its tenants were paying by checks to its order. It should have presumed that they were doing so in some instances at least, and this being so the appellant should have known that the agent was indorsing such checks for deposit. Furthermore, it was immaterial to appellant, as long as it permitted its agent to deposit the rents in his own account, whether the rents were paid by check to the appellant's order, as was the case with the checks in question, or by check to the agent's order, where no question of indorsement could have arisen. In fact, checks to the order of the agent would have given him a far greater measure of control over the fund than checks to the order of the appellant, and yet the appellant either permitted the latter, or else assumed that the paper was drawn to its own order and that the agent was indorsing it for deposit. The point is that the principal either tacitly or expressly authorized the agent to deposit his collections to his own account, and the conversion by Clement, discovered in June, 1913, was not accomplished by the indorsements in question by which the funds were deposited in the agent's personal account, but by the agent's failure to remit from his account moneys of his principal which he had so deposited by authority. The authority to indorse for deposit in a local bank may reasonably be inferred in such a case, where it would be wholly unreasonable to infer authority to indorse for sale or discount a foreign bill of exchange. There is a most substantial difference between the various kinds of paper and the various purposes of indorsement. [3] The test for ascertaining the question of the agent's authority to indorse negotiable paper is stated in *Jackson Paper Mfg. Co.* v. *Commercial Nat. Bank, supra,* to be this: Can the agent perform the duties of his agency without the exercise of such authority? "In other words," says the court, "the power of an agent to indorse commercial paper for his principal must be a necessary implication from an express authority conferred upon such agent." Conceding the correctness of this rule, we here have evidence justifying the conclusion that the agent had authority to deposit all rents collected by him in his personal account, for the purpose of remitting the same to his principal by his personal check. [4] This authority carried with it the power essential to that course of

business, namely, the indorsement for deposit of checks made payable to the principal where such were collected. (Civ. Code, sec. 2319, subd. 1.)   The case of *Dispatch Printing Co.* v. *National Bank of Commerce,* 109 Minn. 440, [50 L. R. A. (N. S.) 74, 124 N. W. 236], cited by appellant, is somewhat similar in its facts, but differs in the essential particular that in that case the agent was expressly directed by the principal not to indorse or deposit checks payable to them, but to remit them direct to the principal.

The evidence amply justified the finding of the trial court that the agent was authorized to make the indorsements made by him for the deposit of the checks to his account, including the checks in question.

The judgment is affirmed.

Lennon, J., Olney, J., Shaw, J., Lawlor, J., and Angellotti, C. J., concurred.

MELVIN, J., dissenting.—I dissent.

While there might be some force in a contention that after the discovery of the conversion of some of the rents by Clement, the plaintiff by retaining him as agent would be estopped to object to the method by which he obtained the money, I cannot bring myself to approve of the doctrine announced by the majority of the court that when a principal employs an agent to collect and transmit rentals he thereby clothes such agent with authority to indorse checks. Some of the statements in the prevailing opinion are so extraordinary that with all due respect to the learned author I must unwillingly review them and dissent from them. For example, this language is used: "The appellant on receiving from month to month the personal check of its agent in satisfaction of rentals, collected, must have been aware of the fact that Clement was depositing all rents in his own personal account, and thus by implication must have approved such deposit. The conclusion cannot be escaped in this case that the authority of the agent included the power to deposit money or paper collected to his own account." Of course the principal supposed that Clement was depositing rents to his own credit, as he was transmitting the money by personal check. That had been the usual course of business; but how did such a supposition bind the principal to the further and extraordinary implica-

tion that the collector was clothed with the high authority to indorse his principal's name? There were three ordinary methods by which the tenant might pay the agent. These were, (1) by actual cash; (2) by check payable to the agent's order, and (3) by check payable to the landlord's order. If by either of the first two methods Clement had collected the money, undoubtedly he might have deposited the cash or the check to his own account, and any subsequent conversion of the funds would have caused loss to his principal. If by the third method the tenant had paid, under the terms of Clement's agency as a collector, he could honestly do but one thing. He could transmit the check itself to the payee. When he indorsed the first check he was guilty of a conversion, not of money, but of his principal's check. If he had left the country the next day can anyone question the fact that the Arcade Realty Company could have compelled the tenant to pay the rent? Or could anyone doubt that the bank which without any inquiry or investigation had recognized Clement's authority to indorse for the payee, could be compelled to reimburse its depositor Phillips? How then did a persistence in wrongdoing sanctify Clement's acts into those of an agent clothed with the power to do those very acts? It is true that much of the money thus obtained was paid to the Arcade Realty Company, but such acts of restitution did not excuse the bank for its astounding lack of ordinary prudence. If the officers of the bank had made the slightest inquiry the plaintiff would have been warned, of course, that its collector was assuming the right to indorse checks made payable to its order.

Continuing the argument, the opinion contains the following language: "But when the principal permitted its agent to deposit the collections to his personal account, to be transmitted by his personal check, it is a fair if not in fact a necessary inference that he had the authority to make such indorsements as were necessary to do this." I fail to follow this reasoning. Because the principal permitted his agent to collect *money* and to transmit it, by no means does it follow that the agency went to the extent of allowing him to accept and to convert something else.

"Rents in large amounts are not habitually paid in money, but by check," says the learned author of the opinion. Undoubtedly that is true, but the next two sentences in my

opinion declare an absolute *non sequitur*. They are as follows: "The principal could hardly have assumed that such paper was all drawn to the order of the agent. The tenants would not naturally so draw their checks, but to the order of the landlord." Why couldn't the principal assume that the checks, if any, were all drawn to the order of the agent? The agent had authority to collect. Why should the principal think that the tenants would not take the convenient method of paying him directly in money or checks? In my opinion the power to indorse was no more involved in the power to collect than would have been an authorization to use a club in compelling Phillips to pay if Clement had employed that method of persuasion. Why would the tenants naturally draw their checks to the order of the landlord? There is no law of statutory origin or of commercial usage which justifies such reasoning. I venture to assert that a large proportion of the rentals of business and residence property in large cities is paid directly to real estate agents and not to owners of the realty.

Continuing, the learned author of the opinion uses the following language: "The appellant receiving all its rentals by the agent's personal check cannot claim that it did not know that its tenants were paying by checks to its order. It should have presumed that they were doing so in some instances at least, and this being so the appellant should have known that the agent was indorsing such checks for deposit." Why should a principal be bound to assume that a trusted agent was going outside of his agency? I cannot, although I have tried, see the force of such reasoning. Again I assert that there is no such rule of law or commercial usage. Does the average tenant of an apartment house know the name of his landlord? I venture to say he does not. And even if he does, he deals entirely with the agent. True, Phillips knew who his landlord was, but he also knew that the Arcade Realty Company had empowered Clement to collect, and the landlord having given him that notice was thoroughly justified, it seems to me, in assuming that the payments were being made to the agent either in money or in checks which the latter might honestly indorse.

If Phillips, either because he did not trust Clement or for any other reason, chose to pay directly by check drawn in the landlord's favor, he was entitled to the protection afforded

by the fact that his banker was bound to pay only the payee or an authorized agent, and it is to be remembered that plaintiff herein has succeeded to Phillips' rights.   If the bank had done its duty Clement could never have been in a position to convert the checks and thereby injure either Phillips or the Realty Company.   Concededly, if Clement had been getting the moneys in an authorized way he could have converted them more easily.   But this does not prove that he was authorized to indorse the corporation's name.   We are dealing with a matter of implied agency, and I solemnly believe the rule announced in the prevailing opinion is illogical and will be productive of much harm.   It will gladden the hearts of careless bankers and make them think that they are no longer held to a high degree of care in protecting their depositors from spoliation.

In the prevailing opinion the majority of the justices approve the test for ascertaining an agent's authority to indorse negotiable paper as set forth in *Jackson Paper Mfg. Co.* v. *Commercial Nat. Bank*, 199 Ill. 151–156, [93 Am. St. Rep. 113, 59 L. R. A. 657, 65 N. E. 136], in which Mr. Chief Justice Magruder used the following language: "The weight of authority seems to be in favor of the contention of appellant, that authority to indorse commercial paper can only be implied, where the agent is unable to perform the duties of his agency without the exercise of such authority. In other words, the power of an agent to indorse commercial paper for his principal must be a necessary implication from an express authority conferred upon such agent." Applying this test to the case at bar it seems to me that power of indorsement was not a necessary implication from the agency. All Clement needed to do, under the terms of his agency, was to mail each check of this sort, or carry it, or send it by messenger, to his principal.