**LAWRENCE J. KERN, Inc., v. PANOS.**

No. 5542.

Court of Appeal of Louisiana.
Second Circuit.

Dec. 3, 1937.

Harry V. Booth, of Shreveport, for appellant.

Cook, Cook & Egan, of Shreveport, for appellee.

TALIAFERRO, Judge.

Plaintiff is a wholesale dealer in cigars, cigarettes, tobaccos, etc., in the city of Shreveport, La. In connection therewith it owns and operates a fleet of trucks from which merchandise is sold and delivered. For the months of January and February, 1937, and prior, one of these trucks was in charge of one Homer Haynes, with authority from plaintiff to sell and deliver its goods only for cash, save to those customers whose names were on an approved list given to Haynes. Defendant's name was not on this list. During said months Haynes made five sales and deliveries to defendant, aggregating $376.08, and in each instance defendant gave him his check in favor of plaintiff to pay for the goods. The checks were then indorsed as follows: "Lawrence J. Kern by (per) Homer Haynes." Each check is also indorsed by the E. H. White Drug Company, of Vivian, La., and was presented to and paid by the Bank of Vivian, on whom drawn. The record is not clear on the point, but we gather therefrom that the drug company indorsed the checks simply to enable Haynes to cash them. He absconded with the proceeds. His present whereabouts is unknown.

After the lapse of some time, plaintiff first became wise to the facts of these transactions through defendant. The bank was immediately interviewed, and the canceled checks exhibited by it. Haynes' illegal action was repudiated, and this suit followed.

· Plaintiff sues for the price of the goods sold to defendant by Haynes, its agent. Its position is that as Haynes was not authoriz-

ed to accept or indorse the checks, and as the proceeds thereof have not been received by it, the price of the goods remains unpaid, notwithstanding the bank's action in honoring the checks on presentation. The payment of the checks on an illegal and unauthorized indorsement, it is argued, amounts to no payment at all.

Defendant takes the opposite position, and contends that the price of the goods was paid by delivery of the checks to Haynes and his subsequent conversion thereof into cash; his action in this respect, it is argued, being within the scope of his authority.

The lower court agreed with defendant's position and rejected plaintiff's demand. It has appealed.

There is no dispute as regards the facts. A question of law only is tendered. It is not contended that Haynes had express authority to indorse checks in favor of plaintiff delivered to him in payment of goods sold to persons not on the accepted list. It is certain he had not presumed to do so prior to this time. He was only authorized to sell to defendant for cash. It is argued, and correctly so, that had defendant paid cash to Haynes for the merchandise, and he had embezzled it, plaintiff would have no recourse against defendant for the amount; and from this premise, it is further argued, since Haynes converted the checks into cash, the same result, in legal contemplation, arose. We find ourselves unable to agree with this line of reasoning.

Haynes violated his instructions when he accepted defendant's checks in payment of merchandise sold him. He aggravated the offense by cashing the checks and embezzling the proceeds. Defendant had a vital interest in seeing, so far as then possible, that plaintiff would receive the proceeds of the checks in payment of the goods, and to this end made them payable to plaintiff. Its indorsement thereof would be the equivalent of a receipt. It was evidently not contemplated by defendant that Haynes would cash the checks as was done by him, but that he would deliver them physically to plaintiff.

■■ The authority of an agent to make or indorse commercial paper for his principal must be express, or reasonably inferred from the nature of the duties intrusted to his performance. Such authority may be inferred or implied where it appears that the line of business the agent is charged with performing necessarily requires that such authority be exercised.

"The authority must be direct and specific, or the facts and circumstances must be of such a nature that the agent's right to act may fairly be implied." 2 Corpus Juris Secundum, Agency, page 1186.

■ Concerning implied authority of particular agents, American Jurisprudence, volume 2, § 178, p. 142, has this to say, which we quote with approval:

"An agent having general authority to manage his principal's business has, merely by virtue of his employment, no implied authority to bind his principal by making, accepting, or endorsing negotiable paper. Nor is the authority to execute or endorse negotiable instruments implied merely from an agent's position as 'cashier'. Indeed, the authority to execute or endorse negotiable paper does not necessarily arise from express authority 'to transact any and all business' for the principal. * * *

"An agent authorized to make collections has no implied authority to endorse checks taken in the name of his principal, even if he is expressly authorized to accept checks or notes drawn in favor of his principal, as well as money. So too, a drummer or commercial traveler employed to sell and take orders for goods, to collect accounts, and to receive moneys and checks payable to the order of his principal, is not, by implication, authorized to endorse such principal's name to such checks."

This composite statement of the law is buttressed by references to decisions of courts throughout the United States. To the same effect is Ruling Case Law, volume 21, par. 45, p. 870; Arcade Realty Co. v. Bank of Commerce, 180 Cal. 318, 181 P. 66, 12 A.L.R. 102.

■ In the present case, it cannot reasonably be argued that it was necessary in any sense of the word that Haynes cash the checks taken by him in violation of his principal's orders, in order to further his principal's business. He owed the duty to both the plaintiff and defendant of delivering the checks to his principal in whose favor they were drawn, and the fact that he did illegally indorse them and embezzle the proceeds, while acting as plaintiff's agent, does not affect the legal situation; nor does it commit plaintiff to a responsibility for his acts so clearly beyond the scope of the powers confided to him.

■ The bare acceptance of a check to pay an obligation does not operate as a

discharge of it until the check has been accepted or paid by the drawee. No assignment of funds of the drawer in the hands of the depositary is effected by the simple issuance and delivery of a check or other negotiable paper. Negotiable Instrument Law, Act No. 64 of 1904, § 189; Gulf Motor Lines v. European Agencies, Inc. (La.App.) 155 So. 523; Bain v. Worsham (La.App.) 159 So. 463; M. Feitel House Wrecking Company v. Citizens' Bank et al., 159 La. 752, 106 So. 292, 293.

And the honoring of a check by the drawee bank on the faith of a forged or unauthorized indorsement does not amount to a payment of the check, nor an acceptance thereof by the drawee. Feitel Case, supra; First Nat. Bank of Washington v. Whitman, Administrator, 94 U.S. 343, 24 L. Ed. 229.

The only case in our jurisprudence to which we have been referred, the facts and issues of which bear analogy to the present one, is the Feitel Case, supra. A study of that case convinces us that it is really decisive of the one at bar. We shall briefly analyze its facts.

The New Orleans & North Eastern Railroad Company made a draft on its assistant treasurer at Cincinnati, Ohio, to the order of the Feitel Company, the plaintiff, payable through the Canal Bank & Trust Company of New Orleans. The draft was delivered (presumably by the drawer) to the Merchants Railway Traffic Association, Limited, "which acted as plaintiff's agent for the sole purpose of collecting the debt for which the draft was given." The traffic association indorsed the draft as follows, "Merchants Railway Traffic Association, Limited, B. E. Slawter, Pres., Agent and Attorney in fact for M. Feitel Housewrecking Co.," and deposited the draft to its account for collection in the Citizens Bank & Trust Company of New Orleans. This bank indorsed the draft and stamped thereon the following: "Through New Orleans Clearing House, indorsement guaranteed." In this form the draft was presented to the Canal Bank and by it paid. The collecting agency did not pay the proceeds of the draft to the Feitel Company, and suit was instituted by it against both banks to recover the face amount of the draft. The opinion says: "It also appears from the petition that said draft was indorsed and collected by the traffic association without any authority from plaintiff; that plain-

tiff knew nothing of the fact that the draft had been issued, or that it had been indorsed and collected by said association, until several months afterwards; and that, upon learning that the draft had been so indorsed and collected, it immediately repudiated the action of the traffic association in indorsing and collecting it, and so notified the Citizens' Bank and the Canal Bank."

The Citizens Bank was sought to be held on account of the words "indorsement guaranteed" placed by it on the back of the draft, and the Canal Bank's liability was asserted because of it having paid the draft "to one who was not entitled to payment on an indorsement made without authority." It was held that the Citizens Bank was not liable to plaintiff because, while guaranteeing the genuineness of said indorsement, it did not guarantee that the indorser acted with authority. The Canal Bank was held not liable because of no privity of contract between it and plaintiff.

Justice Overton in that case reviews the whole field of Louisiana jurisprudence pertinent to the issues involved. It is further said therein:

"And the only result of the negligence of the Canal Bank in paying the instrument, on the faith of plaintiff's indorsement, the indorsement being unauthorized, was to make the supposed payment no payment at all, and to give the bank, as appears from section 23 of the Negotiable Instruments Law, no right to retain the instrument.

"It follows from what we have said that plaintiff's action, if the allegations of his petition be true, is not against either bank for the amount of the check, but, as the check has never in reality been paid, its action for such amount is against the drawer, just as it would have been had the bank, on a proper indorsement, when the check was first presented, refused to pay it."

█ And so we find in the present case. Plaintiff may not sue the Bank of Vivian for the amount of the checks as there is no privity of contract between them. The checks have not in reality been paid, since they were unauthorizedly indorsed; and, as the checks have not been paid, it follows that plaintiff has not received payment for the goods sold defendant.

The judgment appealed from is incorrect and, for the reasons herein assigned, said judgment is annulled, avoided, and reversed, and it is now ordered, adjudged, and decreed that plaintiff, Lawrence J. Kern, Inc., do have and recover judgment against defendant, Andrew Panos, operating under the trade-name of "Silverwood Coffee Shop," for the sum of $376.08, with legal interest on the integral amounts thereof and from dates as follows: $48, January 23, 1937; $84.23, January 29, 1937; $79.18, February 5, 1937; $83.52, February 13, 1937; $81.15, February 20, 1937; and costs.