Plaintiff, an automobile dealer in the City of Shreveport, seeks to recover judgment against the defendant, First National Bank of said city, for $302.87, the amount of a check drawn by plaintiff on and honored by said bank, and which was made payable to H.C. and Mamie Maxwell, residents of the City of Overton, Texas. It is alleged that the signatures of the payees on the check were forged and, for this reason, it should not have been honored and that no legal payment thereof has resulted; that said bank, after honoring the check, delivered the money on same to persons other than the payees, charged the check to petitioner's account, and refused to credit plaintiff's account with the amount thereof after discovery of the forgery and after demand that such be done.
The bank admits honoring the check as alleged, but denies that the names of the payees were forged. It further alleges that said check was issued for and delivered to persons unknown to plaintiff which, in effect, is equivalent to making it payable to bearer; that the action of plaintiff in identifying the persons to whom the check was delivered, induced Alphonse Brenner Company, Inc., to whom first presented, to cash the same; that by its conduct plaintiff is estopped to assert that the check was not cashed by the payees named therein.
Further answering, the bank avers that the check was deposited in its banking institution by said Alphonse Brenner Company, Inc., after being endorsed by it to guarantee all prior endorsements, and received credit therefor on its checking account with defendant. The Alphonse Brenner Company, Inc., was called in warranty and judgment against it prayed for co-extensive with judgment, if any, as shall be rendered on the main demand against defendant.
The answer of the Alphonse Brenner Company, Inc. to the petitioner is virtually the same as that of the bank. Answering the call in warranty, this company admits depositing the check to its account in the bank and guaranteeing all prior endorsements thereon. Further answering, it pleads that plaintiff's identification to Frank Gremillion of the persons to whom the check was delivered induced him to write his O.K. thereon and to guarantee the same to this warrantor, thereby warranting the title of said instrument and the validity of the endorsements thereon. Alphonse Brenner Company, Inc. called Gremillion in warranty and judgment was *Page 78 
prayed for against him to the same extent, if any, as shall be rendered against said Alphonse Brenner Company, Inc.
Gremillion's answer to the petition is practically the same as that of the bank and the Alphonse Brenner Company, Inc. He denies that he O.K.'d and guaranteed the check to the Alphonse Brenner Company, Inc. and denies that he caused or induced that company to cash the check; that he did not guarantee any endorsement on the check for the reason there were none thereon when he wrote upon the check "O.K., Frank Gremillion". He further alleges that said notation on the check was placed thereon solely for the information and protection of the cashier of the drug store of which he was manager, which fact, he alleges, was well known to the Alphonse Brenner Company, Inc.; that said company did not rely upon said alleged guarantee by him in cashing the check.
Plaintiff appealed from judgment rejecting its demand.
The material facts of the case are virtually uncontradicted. They are exceedingly unique and interesting and might appropriately be dubbed a "comedy of errors".
In the afternoon of November 18, 1939, two young men appeared at plaintiff's place of business, one of whom expressed a desire to purchase a used car. Neither was known to the officers and employees of the company. With little delay, a selection was made at the price of $210.00 and the trade was closed. The purchaser produced a check for $512.87 in favor of H.C. and Mamie Maxwell. It was issued by Stanolind Oil Purchasing Company of Tulsa, Oklahoma. He represented himself to be H.C. Maxwell and stated that Mamie Maxwell, whose purported endorsement was already on the check, was his wife. He then endorsed "H.C. Maxwell" on the check and delivered it to plaintiff who issued its own check for $302.87 on defendant bank in favor of H.C. and Mamie Maxwell. This check was delivered to the purchaser of the car. He was an imposter as was subsequently learned. Payment of the $512.87 check was stopped by the drawer and then all concerned began to take stock of what had happened.
The Maxwells, payees in the $512.87 check, are husband and wife. They appeared and testified as witnesses in the case. It is certain that neither endorsed the check nor authorized anyone to do so. It is not shown by what means the check got into the hands of the imposter. The record does not disclose his identity.
The morning following the purchase of the car, the two men went to the furniture store of the Alphonse Brenner Company, Inc. in the City of Shreveport, and there purchased some furniture. The check plaintiff had issued, out of which they wished to pay the price of the purchase, was produced and tendered. It was referred to Mr. Brenner, president of the company. He asked if they could have it O.K.'d, to which one replied: "They will O.K. it up at the drug store" (referring to the drug store of which Gremillion is manager). The check was handed back to the man and he and his companion disappeared. They soon returned with the check on which was written in the upper left hand corner: "O.K., Frank Gremillion". The check was then handed to Brenner and the difference in cash paid. But, prior to doing this, Brenner called Gremillion on the 'phone and asked him if the check was O.K., to which, Brenner says, Gremillion answered in the affirmative. The names of the payees had been endorsed on the check before it was presented to Alphonse Brenner Company, Inc. the second time, however, the endorsements were not made in the presence of anyone connected with that company. Whether such endorsements were made prior or subsequent to Gremillion's O.K. thereon is a controverted question and will be hereinafter discussed. Brenner says he cashed the check on the O.K. of Gremillion after an officer of plaintiff company had identified the men to Gremillion on the 'phone, but he would not say that the endorsements were thereon when he first saw it.
The two men, after leaving Brenner's place the first time, went to the drug store a short distance away and there presented the check to the cashier and requested her to cash it. She called Mr. Gremillion and asked him if he would O.K. the check. Before doing so and at the suggestion of an officer of the drug store, Gremillion called plaintiff's office and enquired if the check was genuine, and being advised affirmatively, he made the O.K. thereon. It developed that the cashier did not have sufficient funds to cash the check. The parties immediately left with it.
Gremillion and the cashier are positive that there were no endorsements on the check when the O.K. was made thereon. He testified that the O.K. was for the protection *Page 79 
and benefit of the cashier and she testified that as she was new on the job, and was not acquainted with the parties, the O.K. of someone in authority was required by her.
As Gremillion did not know these parties and was to no extent interested in them or the check, it obviously appears that he could have O.K.'d the check for no reason save that assigned by him.
The defense that the check was in effect made payable to bearer seems to have been abandoned. It is not urged here. It was not made payable to a fictitious person. If so, it would have to all legal intents and purposes, been payable to bearer. United Motor Car Company v. Mortgage Securities Company, 13 La.App. 385, 128 So. 307.
The deciding weight of authority in this country is that when a depositor deals with and issues his check to an imposter who wrongfully assumes the name under which he masquerades, payment of such check by the drawee bank to the imposter or his order gives to the depositor no recourse upon the bank for reimbursement on the ground that the named payee was not in reality the person he represented himself to be. It is held in such circumstances that it is not forgery for such payee to endorse the check. The reason of the rule is based primarily upon the "principle of natural justice that, as between two innocent persons, the one whose act was the cause of the loss should bear the consequences". Other reasons for the rule are that the check was issued to the person the depositor intended and with whom he dealt, and the proceeds were paid by the bank to such person. 3 R.C.L., 544; 9 C.J.S., Banks and Banking § 356, p. 742, 7 Amer.Juris. 435. This last citation, on the subject, says: "* * * In such cases the principle that, as between two innocent persons, the one whose act was the cause of the loss should bear the consequences applies. The transaction begins with the depositor, and it is his duty to use diligence to ascertain the identity of the party with whom he deals. The bank has a right to believe that the depositor has acted with full knowledge of the party to whom he gave the check for the money, and its duty to him is discharged when it satisfies itself that the payment was intended to be made to the party who presented it. Also, in such a case the intention with which the drawer issued the check has been carried out. The person has been paid to whom he intended payment should be made. There has been no mistake of fact except the mistake which he made when he issued the check, and the loss is due, not to the bank's error in failing to carry out his intention, but primarily to his own error, into which he was led by the deception previously practiced upon him. * * *"
In view of this legal principle, had plaintiff issued its check to H.C. Maxwell alone and it had been paid on the imposter's endorsement, no action would lie against the bank for so doing. But a different situation is here presented since neither of the strangers represented himself to be Mamie Maxwell and her signature on the check is admittedly a forgery.
Plaintiff intended that Mamie Maxwell and the person representing himself to be H.C. Maxwell should be paid the amount of the check and since Mamie Maxwell did not endorse the check, so far as concerns plaintiff, the check has not been paid. Lawrence J. Kern, Inc., v. Panos, La.App., 177 So. 432, 433, and authorities therein cited.
It is well settled that the drawer has the right to recover from the drawee on an instrument paid on a forged endorsement. See citations (Brannan's 5th Ed.) under Section 23, N.I.L. (Act No. 64 of 1904). The referred to section reads: "Where a signature is forged or made without the authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature,unless the party, against whom it is sought to enforce suchright, is precluded from setting up the forgery or want ofauthority."
It is argued that had plaintiff exercised the degree of caution and diligence which the exigencies of the situation demanded, it would have discovered that the holder of the oil company check was an imposter and thus have averted the loss which thereafter followed; that as a consequence of plaintiff's negligence in this respect, the other errors occurred; and that said negligence was the proximate cause of the subsequent chain of events culminating in the bank's error in paying the check on a forged endorsement, which precludes recovery by plaintiff herein. John C. Smith v. Mechanics' *Page 80 Traders' Bank, 6 La.Ann. 610, is cited in support of this contention.
Plaintiff believed it was dealing with H.C. Maxwell and that the check had been endorsed by Mamie Maxwell, the other payee. It may be conceded that plaintiff acted on scant evidence to reach this belief, but we do not think this materially affects nor has a controlling influence upon a correct decision of the case. Its good faith is conclusively presumed for no reputable business man or institution will knowingly receive and/or negotiate a forged check. Believing it was dealing with H.C. Maxwell and desiring to protect itself against eventualities as well as to protect the interest of Mamie Maxwell, its own check was made payable to both persons, the same as was the oil company's check. Neither the bank, Brenner nor Gremillion knew anything about the $512.87 check nor the circumstances attending its delivery to plaintiff; and, of course, did not know that plaintiff had been imposed upon. They assumed that plaintiff would not have issued the check to the named payees but for good reasons.
The bank had no right to assume, if it did, that plaintiff personally knew or had had personal business dealings with the Maxwells. It is of every day occurrence that depositors issue checks to persons and/or firms located a great distance from them and with whom there has been no intimate business contact — no personal acquaintance. In such instances the depositor assumes, as he has a right to, that the depositary bank will see to it that such checks are not paid unless and until validly endorsed by the payee or payees. The expeditious transaction of present day business demands that this course be followed. The depositor issues an unconditional order to the bank to pay a certain person or persons or his or their order, a definite amount in cash. He throws upon the bank the responsibility (which is its duty) of not paying out his money save to whom entitled to receive it. There is nothing singular, unreasonable nor unusual in such a course.
This line of reasoning finds positive support in the case of United States Cold Storage Company v. Central Mfg. Dist. Bank, decided by the Supreme Court of Illinois, and reported in343 Ill. 503, 175 N.E. 825, 829, 74 A.L.R. 811. We quote therefrom with approval, the following:
"* * * Out of the relation of debtor and creditor existing between banks and their depositors, the law implies the contract on the part of the bank to pay the depositor's checks, to the amount of his deposit, to the persons to whom he orders payment to be made. If the check is made payable to the order of a person named, the duty of the bank is absolute to pay only to the payee or according to his order. No amount of care to avoid error will protect the bank from liability, if it pays the check to a wrong person, and it must ascertain and act upon the genuineness of the indorsement at its peril. Jordan Marsh Co. v. National Shawmut Bank, 201 Mass. 397, 87 N.E. 740, 742, 22 L.R.A. (N.S.) 250; Welsh v. German-American Bank, 73 N.Y. 424, 29 Am.Rep. 175; Critten v. Chemical Nat. Bank, 171 N.Y. 219, 63 N.E. 969, 57 L.R.A. 529; Seaboard Nat. Bank v. Bank of America, 193 N.Y. 26,85 N.E. 829, 22 L.R.A. (N.S.) 499; Armstrong v. Pomeroy Nat. Bank, 46 Ohio St. 512, 22 N.E. 866, 6 L.R.A. 625, 15 Am.St.Rep. 655; Jackson v. National Bank of McMinnville, 92 Tenn. 154, 20 S.W. 802, 18 L.R.A. 663, 36 Am.St.Rep. 81.
"The negligence of the drawer of a check is immaterial, unless it is such as directly and proximately affects the conduct of the bank in the performance of its duties. Jordan Marsh Co. v. National Shawmut Bank, supra; Shepard Morse Lumber Co. v. Eldridge, 171 Mass. 516, 51 N.E. 9, 41 L.R.A. 617, 68 Am.St.Rep. 446; Welsh v. German-American Bank, supra; Shipman v. Bank of the State of New York, 126 N.Y. 318, 27 N.E. 371, 12 L.R.A. 791, 22 Am.St.Rep. 821; Los Angeles Investment Co. v. Home Savings Bank,180 Cal. 601, 182 P. 293, 295, 5 A.L.R. 1193. A bank can justify a payment on a depositor's account only upon the actual direction of the depositor. The questions arising upon checks between the drawee and the drawer `always relate to what the one has authorized the other to do. They are not questions of negligence or of liability of parties upon commercial paper, but are those of authority solely. * * * The question of negligence cannot arise unless the depositor has, in drawing his check, left blanks unfilled, or by some affirmative act of negligence has facilitated the commission of a fraud by those into whose hands the checks may come.' Crawford v. West Side Bank, 100 N.Y. 50,2 N.E. 881, 882, 53 Am.Rep. 152. The payment of a check on a forged indorsement appearing, it becomes incumbent on the bank making the payment to establish affirmatively the drawer's negligence, and it is not the law that the drawer is bound to prepare his *Page 81 
check so that nobody can successfully tamper with it. Critten v. Chemical Nat. Bank, supra. Nor does he owe the duty to his banker to employ none but honest clerks who will not steal his checks and commit forgeries by means of them. When he has drawn his check payable to the order of the payee named, he owes the drawee no other duty, and the risk of the authenticity of the indorsement on which the drawee pays the check is that of the drawee."
Is there any causal connection between plaintiff's failure to exercise a higher degree of care in dealing with the stranger and the bank's payment of the check on a forged endorsement? We are unable to perceive any. Would not the same result have been attained if the check had been sent to these payees at Kilgore, Texas, and thereafter cashed by the bank on forged endorsements? Surely it would. Would the bank have acted differently in such a case from what it did in the present case? We do not think so.
The case of Smith v. Mechanics' Traders' Bank, supra, relied upon by the defendant, the warrantors and the lower court, does support the main defense advanced against plaintiff's demand. The facts of that case are quite similar to those we are now dealing with. Smith was a broker in the City of New Orleans. He bought and sold commercial paper. He discounted without inquiry for an entire stranger, a forged bill purporting to be drawn on and accepted by Payne Harrison, a commercial firm in said city. He gave the forger his own check upon a New Orleans bank, payable to the order of the acceptors of the paper he had purchased. The stranger by a forged endorsement cashed the check. The court rejected Smith's suit to recover from the bank on the ground that he did not exercise due precaution in taking the bill without inquiry and that his negligence was the proximate cause of the bank's error.
We think the court went very far, in fact too far, in that case to protect the bank. This is demonstrated from the fact that Smith's check, delivered to the imposter, was endorsed "Payne 
Horrin" instead of "Payne Harrison"; yet the court attached no importance to the notice this error should have imparted.
If we felt bound by this decision, it would be our obvious duty to affirm the judgment appealed from, but we do not feel bound by it because in our judgment it is not good law. The decision stands alone in our jurisprudence. Whatever else might be said of the case (decided by a divided court), we do not believe that in the light of present day business methods and commercial dealings it should be followed.
There is no question about the liability of the Alphonse Brenner Company to the bank on its unrestricted endorsement of the check. It admits that the genuineness of all prior endorsements was guaranteed by it. Sections 65 and 66, N.I.L. (Act No. 64 of 1904). And it admits that because of this guarantee the bank honored the check and credited its account therewith.
The lower court, after reaching the conclusion that plaintiff should not recover, of course, did not pass on the issues raised by the calls in warranty. All angles of the case were fully developed below by testimonial proof and documentary evidence. This being true, this court is vested with the power and authority to render judgment disposing of all questions and issues raised below. Terral v. Jones et al., La.App., 161 So. 626, and authorities therein cited.
The Alphonse Brenner Company, Inc., answering the appeal, firstly prayed for affirmation of the judgment and, alternatively, for judgment against Gremillion for the same amount as the bank should recover, if any, against it.
Gremillion's liability to the Alphonse Brenner Company, Inc., if any, turns upon the significance to be given his endorsement on the face of the check in the light of the established facts pertinent thereto.
We do not understand that the mere endorsement of the letters "O.K." with signature on the face of commercial paper has any significance beyond saying that the paper is genuine and/or regular in point of form. Generally such an endorsement means that the instrument is correct; all right, or that it meets the approval of the one so endorsing it. Keel v. Wynn et al.,210 N.C. 426, 187 S.E. 571.
In no sense of the word does such an endorsement mean or tend to mean that the identity of the holder of the paper is known to the endorser or that he vouches that the holder and the payee therein are identical. Gremillion could not have so intended because he did not know either payee nor the stranger who held the check. The name "Mamie", so far as our knowledge extends, is conferred exclusively on members of the female sex. No woman was *Page 82 
present at Gremillion's place nor at Brenner's, and no effort was made by anyone to ascertain if she was in the City of Shreveport at the time or that her genuine signature could be procured on the check.
Brenner testified that when the check was handed to him with Gremillion's O.K. thereon (evincing some distrust), he called Gremillion on the `phone and asked him whether the check was O.K. He says that Gremillion's reply was "Yes, I rang up Mr. Smith (plaintiff's manager) or Mr. Ware (its president), and Mr. Ware identified these people over the `phone to me"; and that, he then cashed the check. Gremillion did not talk with Ware but with Smith. Smith denies that he attempted to identify the men to Gremillion, assigning as reason therefor that he did not see the men while in his place of business. The trade for the car was negotiated and closed by plaintiff's used car salesman.
Even if Smith did identify the men to Gremillion as being the ones to whom the check was delivered, that does not mean at all that he identified either of them as Mamie Maxwell. Her identity as a payee was entirely left open and the same can be said of Gremillion's identification of the parties to Brenner. Gremillion testified that he told Brenner the O.K. by him on the check was solely for the information of his cashier.
Brenner's action throughout this matter evinces a desire to be careful, but he overlooked one material point. He accepted as genuine the endorsement of Mamie Maxwell's name on the check without making any inquiry about her, notwithstanding that neither stranger represented himself to be she. He acted at his own peril in doing so.
The record rather clearly shows that both Gremillion and Brenner were more interested in knowing that the check was genuine than they were of the identity of the holder and when advised by Smith that the check was O.K. no further questions were asked.
As Gremillion did not guarantee the endorsements on the check nor the identity of the holder who presented it to Brenner, we are clear in the opinion that no action lies against him for what he did do.
For the reasons herein assigned, the judgment appealed from is annulled, avoided and reversed, and it is now ordered, adjudged and decreed that plaintiff, Allan Ware Pontiac, Inc., do have and recover judgment against the defendant, First National Bank of Shreveport, in the sum of Three Hundred Two and 87/100 ($302.87) Dollars with interest thereon at the rate of five per cent (5%) per annum from judicial demand until paid.
And for said reasons it is further ordered, adjudged and decreed that defendant, the First National Bank of Shreveport, do have and recover judgment on its call in warranty against Alphonse Brenner Company, Inc., for the sum of Three Hundred Two and 87/100 ($302.87) Dollars, with five per cent (5%) per annum interest from judicial demand until paid.
It is further ordered, adjudged and decreed that the demand of Alphonse Brenner Company, Inc., against Frank Gremillion as warrantor be and same is hereby rejected.
It is further ordered that costs of suit and incidental demands be paid by Alphonse Brenner Company, Inc.