Open Shop Employing Printers Association of Chicago, Appellee, v. Chicago Trust Company, Appellant.

Gen. No. 34,734.

Opinion filed October 21, 1931.   Rehearing denied November 2, 1931.

FRANCIS E. HINCKLEY and EMMET J. CLEARY, for appellant; FRANK C. RATHJE, of counsel.

F. F. & J. V. NORCROSS, for appellee; J. V. NORCROSS and HENRY FITTS, of counsel.

MR. JUSTICE WILSON delivered the opinion of the court.

This action was brought by the Open Shop Employing Printers Association of Chicago, a corporation, against the Chicago Trust Company, a corporation, to recover money paid out by the defendant on certain checks drawn by the plaintiff to certain payees on the unauthorized and forged indorsements of the payees' names by one Robert J. Tufts, an employee of the plaintiff.

It appears from the evidence that the plaintiff, in addition to its commercial account, maintained an account in the defendant bank under the designation, "Chicago Trust Company as Trustee u/agreement Open Shop Employing Printers Assn. of Chicago Bonus Account Trust No. 1328." The defendant company was also the depositary of a certain savings account belonging to the plaintiff and carried on the books of the defendant company under the designation, "Chicago Trust Co. Trustee Open Shop Employing Printers Association of Chicago, Bonus Fund, 110370." It appears that the Trust Fund was established for the purpose of carrying on and supporting an "activity" of the plaintiff's which was for the purpose of providing a fund out of which the apprentices who were learning the business were paid a bonus upon graduation. These apprentices were taught in what was known as the Chicago School of Printing. The fund itself was made up from the payment of certain sums by members of the plaintiff association and the account was generally referred to as to the "Chicago School of Printing Bonus Account." Before these sums came into the Bonus Account, however, they were paid into the general checking account and periodically checks were drawn upon this account covering the amount paid in for the Bonus Account and this sum was made out for deposit in the Chicago School of Printing Bonus Account already referred to. Thirty-nine of the checks in question were drawn in favor of this Bonus Account by the proper officials of the Open Shop Employing Printers Association of Chicago and 24 checks were drawn by the officials of the Open Shop Employing Printers Association against the commercial or checking account. The 39 checks made payable to the Chicago School of Printing after they had been executed by the proper officials, were indorsed with a rubber stamp bearing the words, "Chicago School of Printing" and, under-

neath, the name of the employee of the company, Robert J. Tufts. The 24 checks in question were made out to different creditors of the plaintiff, presented by Tufts to the proper officials for their signatures, and Tufts thereupon forged the indorsements of the payees and presented them for payment to some other bank than that of the defendant. The checks made out to the Chicago School of Printing, which were checks drawn in favor of the Trust Fund, after the name of the payee therein had been forged by Tufts, were also cashed at other and different banks than that of the defendant and all of these checks were passed through the Clearing House and honored by the defendant and charged to the deposit account of the plaintiff. In the case of the checks, or vouchers as they are sometimes termed, to the Chicago School of Printing, it is apparent that the defendant corporation, Chicago Trust Company, was, in fact, the payee and should have had knowledge of the fact that the indorsement had been improperly placed upon the backs of the checks in question. This Trust Fund had been created by a resolution of the Open Shop Employing Printers Association of Chicago and copies of the resolution presented to the defendant and duly acknowledged. The defendant thereupon assumed the obligation as trustee of this fund and it was to this defendant, as trustee under the name Chicago School of Printing, Bonus Fund, that these checks were made payable.

The Chicago Trust Company defends on the ground that it is a large institution employing many people and with many accounts and that it sent monthly statements to the plaintiff and that a proper examination of the account by the plaintiff would have shown the irregularities and that, therefore, the plaintiff company should not be entitled to recover on account of its own negligence.

It is not questioned in the briefs filed on behalf of the defendant, but that the indorsement of the names of the various payees was forged by Tufts. It also appears from the evidence that the only duty of Tufts was to prepare checks for signature, and that when they were presented to the proper officials for that purpose, the names of the payees appeared in the body of the checks.

Counsel for defendant in a supplemental brief filed in this cause stated that the facts are identical in principle with those involved in the case of *United States Cold Storage Co. v. Central Mfg. District Bank,* decided by the Supreme Court of this State on appeal from this district. Defendant cites and relies upon the opinion originally filed in that case. We agree with counsel in this regard but, the opinion referred to, on a petition for rehearing, was reversed and appears under the title, *United States Cold Storage Co. v. Central Mfg. District Bank,* 343 Ill. 503. The question involved, as set out in that opinion follows:

"The question to be determined in this case is whether a bank which has paid a check drawn upon it by one of its depositors, a corporation, payable to the order of a named person upon the forged indorsement of the payee, can successfully defend against the reimbursement of the depositor upon the ground that the check, after being prepared for execution under the direction of an employee of the corporation who furnished the name of the payee and the information for the voucher attached to the check but who was not authorized to sign the check separately or jointly with any other person, was presented by such employee to two other employees of the corporation who were authorized to execute the check by signing it jointly, and did so execute it in reliance upon the information furnished by the first employee, and where it further appeared that the depositor was not in-

debted to the payee, and the check was not delivered to or indorsed by the payee but was cashed by another bank than that on which it was drawn, upon a forged indorsement of the payee's name, and was subsequently paid by the bank on which it was drawn."

The question to be determined is, in our opinion, precisely the same as that stated by the Supreme Court in the foregoing opinion. It was there held that it was the obligation of the bank to its depositors, and to the person named in the check, that it ascertain the genuineness of the indorsements; that it was the bank's duty to do this.

The negligence of the drawer of a check is immaterial, unless it is such as directly and proximately affects the conduct of the bank in the performance of its duties. Such would be the case if the checks were signed in blank and the employee allowed to fill out the name of the payee or the amount of the check. The checks in question in the case at bar were drawn in the regular course of business and made payable to actual persons in existence, and they were signed upon information derived from those preparing the checks who were in the employ of the plaintiff and on whom they had a right to rely.

The agent Tufts in the case at bar was engaged in committing an individual fraudulent act and any knowledge he might have had in so doing is not imputable to his principal. The Supreme Court in its opinion in the case of *United States Cold Storage Co. v. Central Mfg. District Bank, supra,* says: "He was simply one of the agents of the plaintiff, in collecting the information upon which the check was based and caused the check to be prepared for signature. His intention in regard to the check was of no importance, for he had nothing to do with giving it vitality. Even if he was expected, as a messenger, to deliver the check to the payee, his intention to deliver or not to

deliver it could not affect the character of the check. If there still remained the duty for him to perform of delivering the check to the payee by mail or otherwise, his intention to betray his employer, disregard his duty, steal the check and forge the payee's name would not become the intention of the plaintiff, whose agent he was only for certain limited purposes, which did not include the drawing of checks.''

The facts in the case at bar are so clearly analogous to those found in the foregoing case, that we see no reason for citing other or additional authorities. The relation existing between the depositor and the bank, as exists in the case before us, is fully expressed in the case of *United States Cold Storage Co. v. Central Mfg. District Bank,* already referred to. The court in its opinion says:

''Out of the relation of debtor and creditor existing between banks and their depositors, the law implies the contract on the part of the bank to pay the depositor's checks, to the amount of his deposit, to the persons to whom he orders payment to be made. If the check is made payable to the order of a person named, the duty of the bank is absolute to pay only to the payee or according to his order. No amount of care to avoid error will protect the bank from liability if it pays the check to a wrong person, and it must ascertain and act upon the genuineness of the indorsement at its peril. *Jordan-Marsh v. National Shawmut Bank,* 201 Mass. 397; *Welsh v. German-American Bank,* 73 N. Y. 424; *Critten v. Chemical Nat. Bank,* 171 id. 219; *Seaboard Nat. Bank v. Bank of America,* 193 id. 26; *Armstrong v. Pomeroy Nat. Bank,* 46 Ohio St. 512; *Jackson v. National Bank of McMinnville,* 92 Tenn. 154.

''The negligence of the drawer of a check is immaterial, unless it is such as directly and proximately affects the conduct of the bank in the performance of

its duties. (*Jordan-Marsh Co. v. National Shawmut Bank, supra; Shepard & Morse Lumber Co. v. Eldridge*, 171 Mass. 516; *Welsh v. German-American Bank, supra; Shipmen v. Bank of the State of New York*, 126 N. Y. 318; *Los Angeles Investment Co. v. Home Savings Bank*, 181 Cal. 680.) A bank can justify a payment on a depositor's account only upon the actual direction of the depositor. The questions arising upon checks between the drawee and the drawer 'always relate to what the one has authorized the other to do. They are not questions of negligence or of liability of parties on commercial paper but are those of authority, solely. . . . The question of negligence cannot arise unless the depositor has, in drawing his checks, left blanks unfilled or by some affirmative act of negligence has facilitated the commission of a fraud by those into whose hands the check may come.' (*Crawford v. West Side Bank*, 100 N. Y. 50.) The payment of a check on a forged indorsement appearing, it becomes incumbent on the bank making the payment to establish affirmatively the drawer's negligence, and it is not the law that the drawer is bound to prepare his check so that nobody can successfully tamper with it. (*Critten v. Chemical Nat. Bank, supra.*) Nor does he owe the duty to his banker to employ none but honest clerks who will not steal his checks and commit forgeries by means of them. When he has drawn his check payable to the order of the payee named he owes the drawee no other duty, and the risk of the authenticity of the indorsement on which the drawee pays the check is that of the drawee.''

The trial court directed a verdict at the end of all the evidence finding the issues for the plaintiff and assessing the plaintiff's damages at the sum of $35,627.96, which included the amount of the checks involved, together with interest. We are of the opin-

ion that the instructed verdict and the judgment thereon was proper.

For the reasons stated in this opinion the judgment of the superior court is affirmed.

*Judgment affirmed.*

HEBEL, P. J., and FRIEND, J., concur.