### SUCCESSION OF COLEMAN

———

(April 21, 1930.   Opinion and Decree.)
(May 9, 1930.   Rehearing Refused.)
(July 2, 1930.   Writ of Certiorari and Review Refused by Supreme Court.)

———

Paul W. Maloney, of New Orleans, attorney for G. B. Fargo, appellant.

Edward A. Parson, of New Orleans, attorney for heirs, appellees.

JANVIER, J.  Upon the death of Henrietta Coleman, widow of Morris Fargo, her succession was opened on the petition of Victoria Fargo Marmillion, Estelle Fargo Dillard, Harry U. Fargo and William O. Fargo, who allege themselves to be the only children and heirs of decedent.  On that petition an ex parte order was rendered, sending the parties named into possession of the estate, particularly of a certain piece of realty.

Decedent left a will under which Victoria Fargo Marmillion was left the disposable portion of the estate and under which the remainder was divided among all the children, including Victoria, and the judgment of possession conformed to the provisions of the will, except that it did not include among those among whom the residue was distributed, the present plaintiff, Grace Bernadotte Fargo, who, in her petition, claims that she is the daughter of Louis Fargo, who, she alleges, was also a son of decedent, Henrietta Coleman Fargo.  Grace Bernadotte Fargo therefore alleges that she should represent her said predeceased father in the succession, and that she thus is entitled to be sent into possession of an undivided two-fifteenths of the estate.

Her claim is resisted by the four parties sent into possession under the ex parte judgment, who maintain that petitioner's father, Louis Fargo, was not a son of the deceased, Henrietta Coleman Fargo, but was an illegitimate son of Victoria Fargo and that, when the said Louis Fargo was born many years ago, he was left with his grandmother, the decedent, in Convent, La., so that the shame of the mother might not be discovered by her friends and neighbors in New Orleans.

Grace Bernadotte Fargo contends that the record does not sustain the defense that Louis Fargo was not the son of Henrietta, but that, even if it does contain sufficient proof to establish the fact that he was not her child, still the present defendants are now estopped to deny that he, Louis, was the son of Henrietta, because Henrietta on many occasions recognized him as her child, and because the present defendants, in the succession proceedings of their father, Morris Fargo, predeceased husband of Henrietta, did not dispute the right of the present plaintiff to a share in that estate.

The proof that Louis Fargo was not the child of the de cujus is abundant and we find in the record no evidence to the contrary, except the fact that, on several occasions in the past, the said de cujus treated him as her son, and except the fact that the present plaintiff, Grace Bernadotte Fargo, was allowed to share in the estate of Morris Fargo as the representative of her predeceased father, Louis.

So far as the actual truth as to paternity or maternity is concerned, there is not the slightest doubt that Louis was not the son of the de cujus.  Unless, then, we are prepared to hold that the real heirs of Henrietta are now estopped to contest the claim of petitioner, it is manifest that her claim must fall.

It is quite true that on the death of Morris Fargo, husband of the present de cujus, the present petitioner, Grace Bernadotte Fargo, as the representative of her predeceased father, was sent into possession along with the real heirs.  It is equally true that the present de cujus, Henrietta Coleman Fargo, bought from Grace her in-

terest in Morris Fargo's estate, and it is equally true that in the partition proceedings in that estate all parties dealt with Grace Bernadotte Fargo as an heir of Morris Fargo, by representation.

We cannot say, however, that they, having been in error in that instance, should now be estopped to contest her claim, as she has not been prejudiced by their error, nor has she been the loser as a result thereof. Rather, the contrary appears. They unquestionably could have prevented her sharing in the estate of Morris Fargo. Either they did not know that her father was not a child of Morris, or they did not care at that time to oppose her claim. In our opinion, it is immaterial what their reason was.

For a long time the jurisprudence of this state as to the effect of allegations made in judicial proceedings was in an unsettled condition. In some cases it was held that a position assumed in one proceeding created a complete estoppel and prevented the introduction later in another proceeding of evidence as to the true facts, without regard to whether or not the other party had been misled to his injury. Other decisions held that a judicial allegation merely created a presumption which might be overcome by a showing of the true facts, unless, by the first allegation, the other party had suffered injury or been misled to his detriment. We are no longer free to consider which of the two lines of reasoning is the more sound, because we believe that the matter has been definitely settled by the Supreme Court in Farley vs. Frost-Johnson Lumber Co., 133 La. 497, 63 So. 122, 137 L. R. A. 1915A, 200 Ann. Cas. 1915C, 717, in which it was said:

"At common law the point has never been doubtful; the rule has always been that while admissions made in other suits are of course evidence, as being declarations against interest, and therefore presumably true, they are no more conclusive, or estoppels, than admissions made out of courts."

The court, after reviewing what appears to be all of the former jurisprudence, said:

"Our conclusion is that Weaver and Johnson, the warrantors, are not concluded by the allegations made in this former suit, which have in no way been acted on by plaintiffs, or in any way prejudiced them, and therefore do not give rise to any estoppel."

If heirship could be created by estoppel, the laws of forced heirship might as well be abolished. We think that the district judge was correct when he said:

"The first thing that presents itself to my mind is whether or not the laws of inheritance of Louisiana can be destroyed by estoppel. It seems to me they cannot. If such would be the case a man might have one son a forced heir and become intensely hostile and inimical to his son, as we have unfortunately so often seen it in life and if the principle contended by counsel for the plaintiff was sound, all the father would need to do in order to practically disinherit his son whom he did not like, but who was his forced heir for at least one-half of his estate, would be to go before a Notary Public and execute a solemn act, by which he would declare that twenty of his nephews and nieces whom he loved, were his legitimate children and on his death they could come in and claim with his real son and his property would be divided into twenty-one portions and the legitimate son, instead of getting one-half of the estate as he could be restricted to by the will would get a one-twenty-first part."

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and it is, affirmed.