44 So.2d 151 (1950)
Succession of VALDEZ.
Succession of BIANCHI.
Nos. 19353, 19354.
Court of Appeal of Louisiana, Orleans.
January 31, 1950.
*153 Connolly & Simoneaux, New Orleans, for Mrs. Alvina B. Bright and Bernard J. Bremerman, Jr., plaintiffs and appellants.
Prowell & Viosca, and Arthur C. Reuter, New Orleans, for Mrs. Palmyro Bianchi Furlong and Charles Bianchi, defendants and appellees.
CHASEZ, Judge ad hoc.
The issue presented by this litigation is whether certain property located in Square 778, Third District of New Orleans, purchased in the name of Mrs. Anna Valdez Bremerman Bianchi during her marriage with Charles Bianchi, belonged to the wife's separate estate or to the community which existed between the spouses.
Charles Bianchi and Mrs. Anna Valdez Bremerman Bianchi were married in the year 1911 and lived together until the death of the former. Charles Bianchi had two children from a previous marriage, viz., Charles A. Bianchi and Mrs. Palmyro Bianchi Furlong. Mrs. Anna Valdez Bremerman Bianchi also had two children from a previous marriage, viz., Mrs. Alvina Bremerman Gregory Bright and Bernard J. Bremerman, Jr.
No children were born of the marriage between Mr. and Mrs. Bianchi.
The property involved was acquired on March 1, 1933, for $2,600 on terms of all credit, from the Union Homestead Association, per act passed before W. Morgan Gurley, Notary Public. Title was taken in the name of Mrs. Anna Valdez Bremerman Bianchi without her husband's intervention, and the act contained no declaration that she was purchasing in her paraphernal right or for her separate estate.
Following the death of Charles Bianchi on September 4, 1936, his succession was opened in the Civil District Court for the Parish of Orleans. On September 16, 1936, a document entirely written dated and signed by Charles Bianchi, bearing date of March 4, 1935, was presented to the court as his last will and testament, and was probated and ordered executed. No further proceedings were taken until October 30, 1947, when Charles A. Bianchi filed an application to be appointed as administrator *154 of his deceased father's estate, and prayed for the taking of an inventory. Pursuant to an order of court, the inventory was taken on November 24, 1947, in which the property in question was listed, described, and appraised at $3,500. Ultimately Charles A. Bianchi was appointed administrator of his father's estate.
The wife, Mrs. Anna Valdez Bremerman Bianchi, died intestate on February 6, 1947, and her succession was duly opened in the Civil District Court for the Parish of Orleans by her two children, who prayed for recognition as her sole heirs at law and for possession of the property involved in this appeal. By a supplemental petition filed the same day, Charles A. Bianchi and Mrs. Furlong were made defendants and duly cited. Judgment was prayed for against defendants decreeing plaintiffs to be the sole owners of the property. By a second supplemental and amended petition, the plaintiffs prayed that in the event the property was adjudged to belong to the community which existed between Charles Bianchi and Mrs. Anna Valdez Bremerman Bianchi, then that they have judgment against Charles A. Bianchi and Mrs. Furlong for $2,600, representing the purchase price of the property, which they claim Mrs. Bianchi paid out of her separate and paraphernal funds.
Answering, the defendants averred that the property belonged to the community of acquets and gains, and they prayed for a judgment decreeing them to be the owners in indivision of a one-half interest therein as children and sole heirs of their father. They denied that the community estate was indebted unto Mrs. Bianchi's separate estate or to plaintiffs.
Inasmuch as the two successions involved a dispute over the same property, the court ordered them consolidated and the ownership claims therein tried together.
After a trial, the district judge concluded, as his assigned written reasons disclose, that the evidence was insufficient to support the allegations of plaintiffs. Accordingly, he rendered judgment decreeing the property to belong to the community, and recognized plaintiffs as being entitled to a one-half interest therein and the defendants the other one-half. The trial judge did not pass on the alternative claim for $2,600. Plaintiffs appealed suspensively from the judgment to the Supreme Court, which held that it had no jurisdiction of the matter, and transferred the appeal to this court pursuant to Act No. 19 of 1912. See 215 La. 791, 41 So.2d 682.
Whilst the matter was pending in the Supreme Court, plaintiffs-appellants, by way of formal exception, pleaded that whatever claim defendants had to the property was barred by the prescription of five years. The exception is grounded on the theory that, whereas Charles A. Bianchi and Mrs. Furlong made no attack upon their father's will, and remained silent for more than five years after it was probated, their claim to an interest in the property is extinguished by virtue of the prescription established by R.C.C. art. 3542, which provides:
"The following actions are prescribed by five years:
"That for the nullity or rescission of contracts, testaments or other acts.
"That for the reduction of excessive donations. * * *"
That part of Charles Bianchi's "will" so far as is pertinent here reads thus:
"New Orleans March 4th 1935.
"To whom it May Concern.
"I Charles Bianchi, of sound mind and from my own free will, do hereby assert and acknowledge, that whatever Moveable or Immovable Property which now exist or shall exist at the time of my death is solely the property of my wife Mrs. Anna Valdez Bremerman Bianchi having been acquired by her with her own Paraphernal Funds from the residues of her first husband Bernard Bremerman's estate.
"Although the records will show that the property in question was bought in and during community, which was for reasons better known to myself.
"It is my wish that my wife's Interest will not and shall not be antagonized by anyone. * * *"
*155 A mere reading of the document probated as the last will and testament of Charles Bianchi at once discloses that he made no testamentary disposition whatever of the property acquired during the regime of the community, nor was any direction of disposition made. Bianchi merely stated that whatever property "which now exist(s) or shall exist" at the time of his death is solely the property of his wife acquired by her with her own paraphernal funds received from the estate of Bernhardt Bremerman, her first husband, and that it was his wish that her interest would not be "antagonized."
It is contended on behalf of appellants that even if the property should be found to have belonged to the community, Charles Bianchi indicated the intention of making a donation mortis causa of his interest to Mrs. Bianchi, and that if his children and heirs, the defendants, were aggrieved thereby, they should have instituted an action for a reduction of the donation within the five years, counting from the date of the order of probate. Counsel cite Succession of Dancie, 191 La. 518, 186 So. 14; and Draper v. Van Leer, 197 La. 259, 1 So.2d 513.
This contention is exceedingly farfetched. To start the tolling of prescription against the right of a forced heir to annul a will or to reduce a donation infringing upon his legitimes, ex necessitate legis, there must be present as a foundation for the prescription a last will and testament in which the testator has made disposition of his property. Not only did Charles Bianchi not make a disposition of the property, but he disavowed ownership of the property and disclaimed interest therein.
The Revised Civil Code, in article 1571, defines a testament as: "* * * the act of last will clothed with certain solemnities, by which the testator disposes of his property, either universally or by universal title, or by particular title."
In Succession of Ledet, 170 La. 449, 128 So. 273, 274, the following language appears: "* * * any document entirely written, dated, and signed by the testator, and purporting to express his last wishes touching the disposition to be made of his estate after his death, is a will by whatever name he may choose to call it. * * *"
Appellants' counsel advance the further contention that Mrs. Anna Valdez Bremerman Bianchi acquired whatever rights the children of Charles Bianchi had by virtue of ten years prescription acquirenda causa. They take the position that the order of probate is tantamount to a deed translative of title, was acquired in good faith, and was followed by complete physical and adverse possession of the property by Mrs. Bianchi. Counsel direct our attention to evidence in the record to the effect that Mrs. Bianchi continued to occupy the property until her death, and that thereafter her children, the plaintiffs, physically possessed the property to the full and complete knowledge of defendants. Plaintiffs cannot succeed on this plea.
To acquire the ownership of immovables by this species of prescription, R.C.C. art. 3479 requires the concurrence of four conditions:
"1. Good faith on the part of the possessor.
"2. A title which shall be legal, and sufficient to transfer the property.
"3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
"4. And finally an object which may be acquired by prescription."
It appears at a glance that two of the required elements are lacking. Mrs. Bianchi, as we have already said, derived no title from her husband sufficient to transfer the property to her. And even if it be conceded that Mrs. Bianchi was instituted as legatee, she was in legal bad faith. If in truth the property belonged to the community, she could not have been ignorant of the existence of Charles Bianchi's two children, and of their interest in the property. If she believed that the order probating the last will and testament divested her stepchildren of their rights, this we think was an error as to the law. *156 It is only in instances where there is error as to facts, and not as to the law, where legal good faith is made the basis of the prescription of ten years acquirenda causa.
Revised Civil Code, art. 1846(3), provides: "3. Error of law can never be alleged as the means of acquiring, though it may be invoked as the means of preventing loss or of recovering what has been given or paid under such error. The error, under which a possessor may be as to the legality (illegality) of his title, shall not give him a right to prescribe under it."
See Roberson et al. v. Reed et al., La. App., 190 So. 153, and cases therein cited.
The pleas of prescription are overruled.
The next point to be considered is the plea of estoppel. Plaintiffs allege that Charles A. Bianchi, by having signed a certain instrument dated May, 1935, effectually estopped himself from ever claiming his interest in the property, if any be had. The said instrument, which was annexed to and made part of the petition, was offered in evidence upon the trial of the case. It reads as follows:
"No. 218-384 Civil District Court Div. _____ Succession of Charles Bianchi
"We, _____ and _____ the only children of the late Charles Bianchi, do hereby declare and acknowledge that we have no interest in the property standing in the name of Mrs. Anna Valdez, widow by first marriage of Bernard Bremmerman and widow by second marriage of Charles Bianchi, and particularly the property described as:

(Description of Property Omitted from this Opinion.)
"and that all of said property is the separate property of the said Mrs. Anna Valdez Bremmerman Bianchi and we concur in the will of the said Charles Bianchi dated March 4, 1935, probated in these proceedings, * * *
"Signed by me this fourth of March in the year of our Lord A.D. 1935.
 (Signed) Chas. Bianchi.
"Signed in the presence of the two undersigned witnesses, at New Orleans, Louisiana, this ______ day of May, 1937.
"Witnesses:
"(Signed) Geo. A. Wille
"(Signed) C. A. Bianchi."
Charles A. Bianchi explained the circumstances under which he signed. His testimony in relation thereto is:
"Q. Mr. Bianchi, will you please inform the court of your recollection of the circumstances under which you signed that document? A. I will. I was working on board the ship and my stepmother came down. I was aboard the ship. They had somebody come aboard and state that my mother was on the dock to see me, so it just took me off my feet. I said `My mother is dead.' Well, they said, `there's a lady on the dock that claims she's your mother.' So naturally I got curious and I came on out there and saw her and recognized her.
"Q. Who was she? A. Mrs. Anna Valdez Bianchi, my stepmother. She came to me and told me she needed the money; the houses needed repairing and needed to make a loan and that my father hadn't left her any money and she wanted some money to repair the housesin other words, in the form of a sort of loan. Well, I was a rather busy man at the time and it took me off the job and I didn't take much time reading this document.

"* * * * * *
"A. No, sir. I really didn't understand the document when I signed it, as a matter of fact; and had I understood it the way it's read to me now I wouldn't have never signed it because I wasn't aware of the fact or didn't know anything about our father's finances. We never did go into those things at all. I was a man at sea and was away most of the time and didn't familiarize myself with any of his personal or financial affairs or any of his business dealings."
The plea of estoppel can avail plaintiffs nothing. In the absence of contradicting evidence, Charles A. Bianchi's testimony that he was unfamiliar with his *157 father's personal and financial affairs, and would not have signed had he been aware of the facts, must be taken as true. In the second place, it is not shown that Mrs. Bianchi or her children were prejudiced to any extent.
The plea of estoppel cannot be maintained where it appears that the party against whom the plea is directed was ignorant of the true facts relating to the matter or forming the subject of the plea. Reed v. Eureka Homestead Society, La. App., 143 So. 891; Succession of Drysdale, 130 La. 167, 57 So. 789; Carroll et al. v. Cockerham et al., 38 La.Ann. 813; Watkins v. Cawthon, 33 La.Ann. 1194.
Likewise, one who acts in ignorance of his rights cannot be estopped. Wells et al. v. Blackman, 121 La. 394, 46 So. 437; Gallagher v. Conner, 138 La. 633, 70 So. 539.
The doctrine of estoppel is applicable only to ignorance of matters of fact, and not acknowledgments or statements of propositions of law. Straus v. City of New Orleans, 166 La. 1035, 118 So. 125.
Nor can a person be estopped by his declarations, even if of a judicial character, which have neither deceived nor damaged anyone. Tyler v. Walt, 184 La. 659, 167 So. 182; Farley v. Frost-Johnson Lumber Co., 133 La. 498, 63 So. 122, L.R. A.1915A, 200, Ann.Cas.1915C, 717.
In Succession of Harris, 39 La.Ann. 443, 2 So. 39, 41, 4 Am.St.Rep. 269, the Supreme Court quoted with approval the following observation made in Stockmeyer v. Oertling, 38 La.Ann. 100: "* * * the doctrine of estoppel, however apparently emphatic, is full of exceptions, which vary according to circumstances, and was never designed to apply to a case like the instant one, in which the declaration made has led no one astray, and occasioned damages to nobody.' * * *"
One who, in ignorance of his rights, acted as an expert or appraiser in a partition proceeding in which the property was divided among others, is not estopped from claiming that such property belonged to him. Wells et al. v. Blackman, supra.
In Succession of Coleman, 13 La.App. 600, 128 So. 44, we held that the recognition of a claimant by the heirs as granddaughter of deceased did not estop the heirs from denying her relationship to decedent, no prejudice resulting.
It is a well settled rule that a husband who has been a party to an act of purchase in which it is declared that the price belonged to the wife in her paraphernal right, and that the property is to be her paraphernal property, cannot afterwards contradict his own solemn assertions and attack the title of his wife. His legatees and simple heirs claiming through him, standing in his shoes, are bound like him and equally debarred. Only creditors whose claims arose before such purchase, and forced heirs, are excepted from the rule. Rousseau v. Rousseau, 209 La. 428, 24 So.2d 676; Pfister v. Casso et al., 161 La. 940, 109 So. 770.
In the earlier case of Kerwin v. Hibernia Insurance Co., 35 La.Ann. 33, it was held that forced heirs are excepted "only to the extent of their legitime and for the purpose of protecting the same. Outside of the legitime, they stand upon precisely the same footing with collateral heirs or universal legatees, having no rights against the decedent, but only rights derived from him and which he himself, if living might assert."
Counsel for appellants argue that under the holding in the Kerwin case, even though we determine that the property belonged to the community, the rights of Charles Bianchi's children cannot exceed the claim for their legitime.
The above quoted language from the Kerwin case could not serve as precedent even if the acknowledgment of Charles Bianchi should be given the same effect as if it had been made originally in Mrs. Bianchi's act of purchase, which point need not be discussed nor decided.
In 1884 (the year after the Kerwin case was decided), by Act No. 5, the Legislature amended R.C.C. art 2239, extending to forced heirs all the rights of creditors to attack simulated contracts of those from whom they inherit, specifically adding that *158 the attack by such heirs is not limited to their legitime.
The article now reads: "Counter letters can have no effect against creditors or bona fide purchasers; they are valid as to all others; but forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit, and shall not be restricted to the legitimate (legitime)."
The right of forced heirs to establish by parol the simulation of acts of conveyance executed by those from whom they claim to inherit extends, according to Act No. 5 of 1884, to the entire estate, and the restriction of such right to the legitime is removed. Cole et al. v. Cole et al., 39 La.Ann. 878, 2 So. 794. See also Spencer et al. v. Lewis et al., 39 La.Ann. 316, 1 So. 671; Bauman et al. v. Pennywell, 164 La. 888, 114 So. 723.
In Westmore v. Harz, 111 La. 305, 35 So. 578, 580, the forced heirs of the husband instituted suit to recover their legitime and whatever further rights they had, pleading that declarations in the deed, that the wife had bought the property with her paraphernal funds, were not true. The property was ordered returned to the mass of the succession. The Court said:
"This brings us to a consideration of the amendment of article 2239 of the Civil Code, which reads: `But forced heirs shall have the same right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit and shall not be restricted to the legitime.'
"Prior to the date of this law, forced heirs had the right, to the extent of their legitime, to have simulated contracts decreed void, and in an action to that end they could introduce parol testimony. The amendment quoted enlarged the remedy and accorded an additional right. Forced heirs are not, since the passage of the amendment, restricted to the legitime. * * *"
On rehearing, the Court said: "* * * By reason of this relationship to him, they fall under the designation of his `forced heirs.' As to parties holding such relations to a deceased person, the estoppel which would have bound him has been released by the provisions of Act No. 5, p. 12, of 1884. So far as they are concerned, matters are thrown open to examination as to the real facts of the case, and the rights of parties are not made to rest upon the statements of the father. These rights are not necessarily rights affecting the legitime. * * *"
We now turn to a consideration of the focal point in the case. Does the property belong to the community?
The fact that Charles Bianchi made a declaration to the effect that the property was acquired with paraphernal funds is immaterial. The property having been acquired during the existence of the community, it is presumed to be community property. R.C.C. arts. 2402 and 2405 provide:
"2402. This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. * * *"
"2405. At the time of the dissolution of the marriage, all effects which both husband and wife reciprocally possess, are presumed common effects or gains, unless it be satisfactorily proved which of such effects they brought in marriage, or which have been given them separately, or which they have respectively inherited."
In Houghton v. Hall et al., 177 La. 237, 148 So. 37, 39 is found the following expression:
"The wife, and those claiming through or from her, to overcome the presumption in favor of the community, must establish three crucial facts, namely:
*159 "(1) The paraphernality of the funds: (2) the administration thereof separately and apart from her husband; and (3) investment by her. Stauffer, Macready & Company v. Morgan, 39 La.Ann. 632, 2 So. 98."
See also Succession of Howell, 177 La. 276, 148 So. 48; Lotz et al. v. Citizens Bank & Trust Company et al., La.App., 17 So.2d 463; and Otis et al. v. Texas Company et al., 153 La. 384, 96 So. 1.
In the case of property which is acquired by the wife on terms of credit, as is the case here, the burden placed on the wife or those claiming under her becomes even greater.
In Lotz et al. v. Citizens Bank & Trust Company et al., supra, our brothers of the First Circuit, after citing Fortier v. Barry, 111 La. 776, 35 So. 900, as authority, held that it was incumbent upon a wife attempting to show that the property was not community to establish by proof outside the recitals of the act of sale, (1) the possession of some paraphernal funds under her administration and available for investment, (2) that the cash portion of the purchase price bore such a relation to the whole as to make the property purchased sufficient security for the credit portion, and (3) that her paraphernal property and revenues were such as to enable her to make the purchase with reasonable expectation of meeting the deferred payments. The court continued by saying [17 So.2d 466]: "This case has particular bearing on the present case in which no cash whatever was given on the purchase price and thus, it would seem, a still greater burden is placed on those so claiming, to prove that it was the wife's separate property."
The evidence in the case shows that by judgment of the Civil District Court for the Parish of Orleans, dated December 12, 1910, Mrs. Bianchi, who was then Mrs. Bremerman, was sent and placed into possession of her undivided one-half community interest in the property left by her first husband, Bernhardt Bremerman. The inventory in the proceedings discloses that her undivided interest in the community was appraised at $2,947.50. One piece of real estate was listed among the assets.
In April or May, 1927 (after her marriage to Charles Bianchi), the real estate was sold, and the evidence tends to show that Mrs. Bianchi received $1,200 in cash, and the sum of $1,133.33 during each of the next three years as deferred payments on the purchase price.
The children of Mrs. Bianchi testified that beginning in 1920, and up until her death, they contributed to their mother each month, together, the sum of $100.
The property involved herein, as we have already remarked, was purchased by Mrs. Bianchi in the year 1933. If she had approximately $4,600 derived from the sale of the property acquired from her first husband's succession, and had been receiving $100 per month from her children for thirteen years, why, we ask, did Mrs. Bianchi find it necessary to buy the property in contest on terms of all credit? At least six years elapsed between the time of the sale of Mrs. Bianchi's property and her purchase from the Union Homestead Association. Not only has there been a complete failure to show that the wife had separate funds and did actually invest them in the property, but a most striking fact appears which would indicate that she actually had none.
Mrs. Bianchi became delinquent in payments on the mortgage held by the Union Homestead Association, and, on July 25, 1934, she made a new loan on one of the parcels of property involved here, from the Home Owners Loan Corporation, in order to pay off the mortgage held by the Union Homestead Association; both Mrs. Bianchi and Charles Bianchi signed the new mortgage and the note evidencing it. The inescapable inference to be drawn from this is that at the time Mrs. Bianchi possessed no paraphernal or separate funds.
The plaintiffs have fallen far short of making the requisite proof. Assuming that Mrs. Bianchi possessed paraphernal funds, or that such funds were available to her, such facts in themselves are insufficient to overcome the presumption that the property belonged to the community.
In the case of Shaw v. Hill, 20 La.App. 531, 96 Am.Dec. 420, the Supreme Court *160 had before it a case in which it was shown that the wife had received funds in cash (gold) in 1853 for the specific purpose of buying the property. She did not acquire it until sixteen months afterward. In rejecting her claim that the property was paraphernal, the Court said: "There is no positive proof that she used the gold, the identical funds, presented to her by Rollins in the purchase of the property."
We now advert to the alternative demand of plaintiffs for $2,600. The trial judge commented thereon as follows: "The claim of plaintiffs to be recognized as creditors in the sum of $2,600.00 must likewise be rejected for the reason that the evidence is totally insufficient to support such claim."
The lower court, although reaching such conclusion, made no mention of this claim in the judgment. The case was fully developed below, and this being so we believe that we are vested with the power and authority to pass upon the alternative demand, and to render such judgment as should have been rendered disposing of all questions and issues raised. See Allan Ware Pontiac, Inc., v. First National Bank, La.App., 2 So.2d 76.
The plaintiffs have not shown that any payments made to the Union Homestead Association or to the Home Owners' Loan Corporation were from Mrs. Bianchi's paraphernal funds, and consequently there is no merit in the demand for $2,600, and accordingly it must be dismissed.
The judgment recognized Mrs. Bright and Bernard J. Bremerman as creditors of their mother's succession to the extent of $280 incurred in the burial of Mrs. Bianchi. We are at a complete loss to understand this, as there is nothing whatever in the pleadings showing that any such claim was advanced. Counsel for appellants made no mention or complaint of this feature of the judgment, either in brief or in argument.
But strangely enough, appellees have answered the appeal praying that the judgment be reversed insofar as the above mentioned part thereof is concerned. The record does not disclose that the children of Charles Bianchi have any interest whatever in Mrs. Bianchi's succession, nor have they shown how they are aggrieved by the judgment. The prayer for reversal must, therefore, be denied.
The judgment does not assess liability for court costs of the proceedings, and in their answer to the appeal appellees ask that the judgment be amended so as to provide that the costs are to be paid by plaintiffs-appellants. The costs shall be paid by the parties cast. C.P. art. 549.
It is ordered, adjudged, and decreed that the judgment appealed from be amended so as to reflect that the alternative demand of plaintiffs be dismissed, and that all costs are to be paid by them, and as thus amended, and in all other respects, it is affirmed.
Amended and affirmed.
JANVIER, J., takes no part.