194 So.2d 164 (1966)
AMERICAN BANK AND TRUST COMPANY
v.
TRINITY UNIVERSAL INSURANCE CO., et al.
No. 6841.
Court of Appeal of Louisiana, First Circuit.
December 28, 1966.
Rehearing Denied February 6, 1967.
*166 Donald T. W. Phelps, of Seale, Hayes, Smith & Baine, Baton Rouge, for appellant.
Ben R. Miller, Jr., of Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, Max Nathan, Jr., of Sessions, Fishman, Rosenson & Snellings, New Orleans, for appellees.
Before LANDRY, ELLIS and BAILES, JJ.
ELLIS, Judge.
This suit was brought by plaintiff American Bank and Trust Company against Trinity Universal Insurance Company, Meyers, Whitty and Hodge, Inc., and John W. Whitty, Jr., for $13,000.00 plus interest and attorney's fees, being the balance allegedly due on three promissory notes made by Cortez Construction Company, Inc. and endorsed by Gilford J. Cortez, Jr.
The alleged liability of the defendants arises out of the following circumstances: Cortez Construction entered into a contract with the Corps of Engineers, dated May 8, 1961, for certain levee enlargement work, the contract having a total price of $88,629.00. The performance and payment bonds under the contract were furnished by Trinity Universal Insurance Company, through its agent, Meyers, Whitty and Hodge, Inc. The bond was executed on behalf of the agency and Trinity by John W. Whitty, Jr.
In August, 1961, being in need of operating capital for the job, Mr. Cortez approached the plaintiff bank for a loan to enable him to proceed with the project. According to Mr. Cortez, he was told that the bank would require an assignment of the payments due under the contract as security. He thereupon approached Mr. *167 Whitty to obtain the consent of Trinity to the assignment. Mr. Cortez testified that Mr. Whitty told him that, in order to avoid government red tape, they would simply make the bank a "co-obligee" under the bond and that this would be "as good if not better than the assignment". Whitty wrote the following letter to the bank:
 "August 21, 1961
"American Bank & Trust Company
"Opelousas, Louisiana
"Gentlemen:
* * * * * *
"This will inform you that we are naming your bank as an additional obligee under the above captioned bond.
 "Yours very truly,
 "Trinity Universal Insurance Co.
 "By ___________________________
 "John W. Whitty Jr.
 "Attorney-in-fact."
According to Mr. Whitty, he wrote the letter because Mr. Cortez asked him to and for no other reason.
Be that as it may, the letter was delivered to the bank, and the loan application was discussed at a committee meeting. As a result of that meeting, a call was placed to Mr. Hogan, "a bond man for another company". The letter was read to him and the situation explained. According to Mr. Willis, the executive vice president of the bank, Mr. Hogan said:
"If you have got a letter where they have named you the co-obligee then you are protected from the standpoint of the bank's advancing funds. He said, `This puts you on top of the totem pole, you come before all laborin my opinion you come before all labor, material and everything else.'"
Mr. Willis had been told by Mr. Cortez that he was free to call Mr. Whitty if he so desired, and Mr. Cortez had further told him that Mr. Whitty had said that the letter would protect them on the loans. Whitty was never contacted by the bank.
The first funds were advanced to Cortez on September 5, 1961. Between that date and February 5, 1962, when the last loan was made, a total of $23,000.00 was advanced to Cortez, and payments of $10,000.00 were applied to the loans.
On October 9, 1961, Cortez wrote the engineers and requested all future payments under the contract be made to the bank. This was not done, but the checks, payable to Cortez, were thereafter sent directly to the bank, together with the progress reports on the job. Between September 19, 1961, and July 21, 1962, $47,445.88 was deposited in the Cortez account under this arrangement. Under the terms of the notes, the bank had the right to apply any of said funds on the notes at any time.
In August, 1962, Cortez defaulted on the contract, which was then taken over by Trinity. In taking over the contract, Trinity assumed all of the obligations of Cortez thereunder. Eventually, it completed the work called for under the contract at a substantial loss.
From this time, no further deposits were made in plaintiff bank. In November, 1962, Cortez Construction Company, Inc., and Mr. Cortez individually, went into bankruptcy. No payments were made on the notes, and this suit was brought in February, 1964.
To the petition, Meyers, Whitty and Hodge, Inc., and John W. Whitty, Jr., filed an exception to the jurisdiction of the court, based on the proposition that the bond sued on was a "Miller Act" bond under the provisions of 40 U.S.C.A. § 270a and § 270b, which provides that the exclusive jurisdiction for such suits lies in the United States District Court. They also filed an exception of no cause or right of action.
A similar exception to the jurisdiction of the court was filed by Trinity.
*168 All exceptions were overruled by the trial court, but are re-urged on appeal.
Judgment was rendered in favor of plaintiff and against Trinity in the full amount sued for, and dismissing Meyers, Whitty and Hodge, Inc., and John W. Whitty, Jr., from the suit. From that judgment, Trinity has appealed suspensively.
The trial court found, as a matter of fact, that:
"* * * Mr. Whitty either knew that the bank as a joint obligee in the bonds would have the right to recover the loan if not paid, as the bank now seeks to do, or he thought it would do no good, as he said in his testimony and he was trying to sidetrack Mr. Cortez to obviate the necessity of approving the assignment and the loan."
He imputed this knowledge to Trinity. He was further satisfied from the evidence that the money borrowed was used to pay for labor and materials on this job.
The district court found, as a matter of law, that when money loaned to a contractor is used for labor and materials, and that loan is made with the knowledge and consent of the surety on the contract bond, the lender has the right to rely on equitable subrogation to the rights of the laborers or materialmen and the surety is estopped to refuse payment to the lender.
We must first consider the ruling of the trial court on the exception to the jurisdiction filed by defendant. The exception is based on the language of 40 U.S. C.A. § 270b, which required that any action brought under a "Miller Act" bond be brought in federal district court. According to § 270a and § 270b, the performance bond operates in favor of the United States of America and the United States is the nominal obligee on both the payment and the performance bonds. The letter making the bank a co-obligee under the bond could not change the legal effect of the bonds or the obligations which flow from same by operation of law. It has been specifically held that one who lends money to a contractor does not get a lien under the bond, and cannot become an obligee. Guaranty Title & Trust Co. v. First National Bank of Huntington, 3 Cir., 185 F. 373. See also Bill Curphy Co. v. Elliott, 207 F.2d 103 (C.A. 5 Tex.1953), in which money advanced for meeting payrolls was held not to be labor or material within the meaning of the Miller Act. If it creates any obligation at all as between Trinity and the bank, it is one which must stand or fall as an independent agreement. The state court would have the right to rule on such an agreement. The exception to the jurisdiction was properly overruled.
However, we cannot agree with the district court in his assessment of the legal issues in the case. Equitable subrogation does not exist in Louisiana. The only subrogation provided for in this state is that set forth in Articles 2159 et seq. of the Civil Code. Article 2160 provides as follows:
"The subrogation is conventional:
"1. When the creditor, receiving his payment from a third person, subrogates him in his rights, actions, privileges, and mortgages against the debtor; this subrogation must be expressed and made at the same time as the payment.
"2. When the debtor borrows a sum for the purpose of paying his debts, and intending to subrogate the lender in the rights of the creditor. To make this subrogation valid, it is necessary that the act of borrowing and the receipt be executed in the presence of a notary and two witnesses; that, in the act of borrowing, it be declared that the sum was borrowed to make the payment, and that in the receipt it be declared that the payment has been made with the money furnished for that purpose by the new creditor. That subrogation takes place independently of the will of the creditor."

*169 Article 2161 provides as follows:
"Subrogation takes place of right".
"1. For the benefit of him who, being himself a creditor, pays another creditor, whose claim is preferable to his by reason of his privileges or mortgages.
"2. For the benefit of the purchaser of any immovable property, who employs the price of his purchase in paying the creditors, to whom this property was mortgaged.
"3. For the benefit of him who, being bound with others, or for others, for the payment of the debt, had an interest in discharging it.
"4. For the benefit of the beneficiary heir, who has paid with his own funds the debts of the succession."
There is obviously no conventional subrogation in this case, since the bank obtained no assignment from any laborers or materialmen. Further, under the clear terms of Article 2161, no legal subrogation arises in a case such as this. As stated in Bank of Bienville v. Fidelity and Deposit Co. of Maryland, 172 La. 687, 135 So. 26 (1931):
"And there was no legal subrogation, because no privilege exists in favor of the furnisher of money used by a building contractor in paying for labor and material, Young v. Barelli, 169 La. 319, 125 So. 258; hence the bank is not a creditor entitled to claim the benefit of a legal subrogation, Civ.Code, art. 2161; Nolte & Co. v. His Creditors, 7 Mart. (N.S.) 602; Lear v. Heffner, 28 La. Ann. 829; Brice v. Watkins, 30 La.Ann. 21; Fishel v. Mercier, 37 La.Ann. 356."
Plaintiff also claims the benefit of the doctrine of equitable estoppel, basing his claim on the letter and the representations allegedly made by Whitty to Cortez as to the legal effect of the letter.
As stated in the case of Olin Gas Transmission Corporation v. Harrison, 132 So.2d 721 (La.App.1961):
"It is settled jurisprudence that there are three elements of estoppel, namely: (1) representation, (2) reliance, and (3) change of position to one's detriment."
To the same effect, see Shirey v. Campbell, 151 So.2d 557 (La.App.1963), in which case the court also said:
"The general rule, however, is that estoppels are not favored. Whenever, estoppel is pleaded as an element of a cause of action, it must be pleaded specifically, and the burden of establishing the facts upon which the plea is predicated, as well as affirmatively showing that the pleader was misled and forced to act to his prejudice, rests upon the party invoking the doctrine."
Further, it appears clear that the doctrine of estoppel applies only when the misrepresentations are as to matters of fact, and not when they are as to propositions of law. Straus v. City of New Orleans, 166 La. 1035, 118 So. 125 (1928); Succession of Valdez, 44 So.2d 151 (La.App. 1950).
In this case, no representations were ever made directly to the bank by Whitty, and the bank never made any attempt to contact him. Although it seems clear that the bank relied on the letter making them an additional obligee, they did not rely on Whitty's representations as to the effect of the letter, but instead sought the opinion of Mr. Hogan. It was on his advice that the bank accepted the letter as a form of security. It further appears that the representations made by both men related to the legal effect of the letter rather than to any matters of fact.
Whatever rights plaintiff may have against Trinity, it must have as a result of the letter naming it "an additional obligee under * * * the bond". As *170 we pointed out in ruling on the exception to the jurisdiction, one advancing funds to a contractor, which are used to pay for labor or materials under a contract, has no rights against the surety on a "Miller Act" bond.
Neither could any private agreement between the surety on such a bond and another party change the character of the bond insofar as the rights of those protected thereunder by operation of law is concerned. Certainly, if Trinity had been called on to expend the full amount of the payment bond in satisfying unpaid claims of laborers and materialmen under the contract, no amounts allegedly due the bank as a result of the letter could be paid until after all such claims were satisfied in full.
Therefore, unless the letter can be construed as a promise to pay any amounts advanced to Cortez in the event he should fail to pay them, it is without legal effect.
The United States of America is the nominal obligee on both the payment and the performance bonds. However, under the terms of 40 U.S.C.A. § 270a and § 270b, the real obligees under the payment bond are laborers and materialmen who have not been paid the price of their services or materials.
Appellees argue that the letter amendment to the bond making the bank an additional obligee has the effect of changing the nature of the bond, taking it out under the Miller Act, and creating a private contract between the bank and Trinity.
Assuming, arguendo, that the effect of being made "an additional obligee under the bond" is to create a private contract between the bank and Trinity, by virtue of which Trinity is obligated to the bank, as a lender of money, to the same extent as it is obligated to laborers and materialmen under the Miller Act, then, of course, the provisions of the Miller Act would have to be read into the contract. The bank could certainly not be said to have greater rights than those conferred on the beneficiaries of the Miller Act, and would be subject to all procedural and substantive limitations placed thereon.
A plea of prescription was filed in this court, based on the provisions of 40 U.S.C.A. § 270b(b), which states that no suit may be commenced after the expiration of one year from the date of final settlement of the contract. It is clear from the evidence that more than a year had elapsed from that date before the instant case was filed. Therefore, even if the above assumption as to the effect of the letter is made, plaintiff's claim would be barred by the prescriptive period provided in the Miller Act.
Neither can plaintiff recover on the theory that the obligation sued on is an "obligation under the contract" and therefore assumed by Trinity when it took over the contract from Cortez. There is nothing in the contract which obligated the contractor to pay those who advance funds to him, for whatever purpose they may be used.
Finally, it is claimed by appellee that a certain letter written by Trinity to its attorney has the effect of showing that Trinity considered itself bound by the letter to pay plaintiff. The offer of the letter in evidence was objected to as being a privileged communication between attorney and client. The letter, which was marked P-16 for identification, is missing from the record and we do not have the benefit of its full contents. However, judging from the contents thereof as revealed by the briefs, we find that it contains, at most, conclusions of law which are inconsistent with those expressed in this opinion, and as such is of no probative value.
For the above reasons, we are of the opinion that the judgment of the trial court, insofar as it grants judgment to plaintiff and against Trinity is incorrect.
*171 The judgment of the trial court is therefore reversed and there will be judgment herein in favor of defendants Trinity Universal Insurance Company, Meyers, Whitty and Hodge, Inc., and John W. Whitty, Jr., and against American Bank and Trust Company dismissing plaintiff's demand at its cost.
Reversed in part, affirmed in part, and rendered.