BARNETTE, Judge.
This is a suit for damages arising out of an intersectional automobile collision. Judgment was rendered in favor of the plaintiff Lawrence Paul Turner for $2,-459,82 for damages as a result of personal injuries sustained and in favor of plaintiff Paul Abraham for $283.36 for damage to his automobile. The judgment is against the defendants, W. D. Ewing, Callender Auto Rental, Inc., and Fidelity General Insurance Company, in solido. A judgment was rendered on the third party petition of defendant W. D. Ewing against his two codefendants in the primary suit for the aggregate amount of the two judg *520 ments for which he was cast in favor of the primary plaintiffs.
A motion and order for appeal named the three primary defendants, Ewing, Cal-lender, and Fidelity as appellants; and the appeal was perfected accordingly. It appears, however, that the attorney of record for Callender and Fidelity no longer represented Ewing at that stage of the proceeding. He was represented at. trial by other counsel. There was no reason for Ewing to appeal from that part of the judgment rendered in his favor as third party plaintiff. However, since no issue has been made of this apparent irregularity we will treat Ewing as an appellant before this court.
Liability to the primary plaintiffs is conceded by stipulation based on the admitted negligence of the primary defendant Ewing. There is no real issue of quantum, since the only suggested error in that aspect of the case is an alleged excess of $133.36 in the award to the plaintiff Abraham for damage to his automobile.
The issues presented by this appeal are actually between the third party petitioner Ewing and the third party defendants Cal-lender and Fidelity on the question of insurance coverage.
On May 7, 1965, W. D. Ewing rented an automobile from Callender Auto Rental, Inc. This was a routine transaction within the scope of business of the automobile rental company. In addition to the usual rental terms and fees, Callender required the payment of one dollar for insurance. Upon payment of one dollar, Ewing was informed that he was protected with liability insurance coverage.
On the same day Ewing had an accident with the rented automobile. He immediately reported the accident to Callender, through Arthur D. Cope, manager of Cal-lender at that time'and with whom Ewing had dealt in renting the automobile. He was again assured by Cope of his liability insurance protection and that the whole matter would be handled from then on by the insurance adjuster. He also' reported the accident to the police and cooperated fully. In fact, he did everything expected of a responsible person.
The assurances of coverage made by Cal-lender to Ewing have never been disputed. This was admitted on trial by the witness Cope.
With this understanding, Ewing left New Orleans and returned to his military duties. He heard nothing further from anyone concerning the accident until he received notice on October 25, 1965, through the Secretary of State, of the suit filed against him.
Ewing, who was then in Georgia, immediately telephoned Cope and was again assured by him that he was protected with insurance. He then telephoned Forrest C. Pendleton, the insurance agency representative through whom Callender had procured its insurance from Fidelity General Insurance Company. Pendleton also assured Ewing of liability coverage. Thereafter he contacted the attorney for Fidelity. He assured Ewing of coverage and that the suit would be defended in his behalf by Fidelity. There is no denial of these facts, and a stipulation was dictated into the record stating, in pertinent part, that “ * * * until December 7,. 1966 [the date when the attorneys for Callender and Fidelity withdrew as counsel for Ewing] * * * Mr. Ewing had every reason to believe that he was insured by that company [Fidelity].”
On August 15, 1966, plaintiffs’ attorney wrote Ewing and informed him that Fidelity was denying coverage and inquired of the name of his personal liability insurer. In any event, therefore, Ewing was aware from the date of receipt of this letter that Fidelity had changed its position with reference to coverage.
On December 7, 1966, Fidelity and Cal-lender filed an amended answer to drop Ewing from their defense of the suit and, at the same time, their counsel formally withdrew as counsel of record for Ewing. *521 In the amended answer, they readopted their original answer with .respect to plaintiffs’ allegation of insurance coverage by Fidelity admitting that a certain numbered policy had been issued to Callender, but denied that it covered a specifically numbered automobile. They again pleaded the policy in extenso as the best evidence of its contents. Thereafter, on May 4, 1967, Ewing, through his present counsel of record, filed an answer to the original petition and by third party petition made Fidelity and Callender third party defendants.
There is no question that representation was held out to Ewing that he was protected by Fidelity and that it would, and did, initially, provide him with defense counsel. There is also no question that Ewing relied upon this representation until notified of Fidelity’s change of position relative to coverage. Whether or not his reliance thereon was to his detriment or he was prejudiced in his defense is another question.
Upon receiving notice of suit on October 25, 1965, Ewing promptly notified his personal liability insurer, United Services Automobile Association. The accident had not been reported to them earlier because of his assurance of liability coverage by Fidelity. At this point United Services engaged an independent claims service company to make an investigation. On November 29, 1965, Calvin C. Hoppmeyer, an adjuster, received notice and was directed to investigate and report. Therefore, from this date on Ewing had the services of his own personal insurance representatives.
Hoppmeyer testified that he contacted the New Orleans attorney representing Fidelity and was told that the policy limits were $10,000 and $20,000; that a medical investigation was then in progress; and that he (Hoppmeyer) would be kept informed. Hoppmeyer was concerned over the possibility of liability on the part of United Services because the suit was for an amount far in excess of Fidelity’s alleged policy limits. This was discussed with Fidelity’s attorney. Hoppmeyer thereafter attempted to get progress reports at intervals of 30 days.
The record discloses that Ewing’s first personal interview with counsel provided by his insurer was on or about February 1, 1967, about 21 months after the accident and moré than ten months before trial of the case.
We must conclude that under these circumstances, Ewing has failed to show that his reliance on the representations of coverage were to his detriment or that his defense of the case was prejudiced. One of the necessary elements to support a plea of estoppel is therefore wanting. American Bank and Trust Co. v. Trinity Universal Ins. Co., 194 So.2d 164 (La.App.lst Cir. 1966); Henderson v. Rossi, 185 So.2d 92 (La.App.4th Cir. 1966); Shirey v. Campbell, 151 So.2d 557 (La.App.2d Cir. 1963); Olin Gas Transmission Corporation v. Harrison, 132 So.2d 721 (La.App.1st Cir. 1961).
On May 4, 1967, third party plaintiff Ewing propounded interrogatories to Cal-lender and Fidelity seeking the description of the rented automobile. With reference to insurance he propounded the following question:
“6. Did Fidelity General Insurance Company have insurance coverage for the legal liability of Callender Auto Rental, its agents, representatives or employees on May 7, 1965 ?”
On November 13, 1967, Ewing filed a motion to compel answer to the interrogatories, which to that date had not been answered. On November 21, 1967, the date the case was called for trial, third party defendants filed their answer to the third party petition. They identified the rented automobile by make, model, license and serial numbers and readopted their former amended answer relative to insurance coverage. In answer to the interrogatories filed at the same time, the foregoing interrogatory No. 6 was answered as follows:
“There was a policy of liability insurance covering certain automobiles of *522 Callender Auto Rentals. The policy will be introduced in the course of the trial and speaks for itself.”
During the course of trial, Ewing did not offer any testimony or other evidence of liability coverage by Fidelity except to prove the representations made, which are discussed above, nor did he identify the rented auomobile except to say it was a 1964 Chevrolet. He did not remember if it was a two-door or a four-door model. Counsel for Fidelity and Callender attempted to introduce into evidence a police report of the accident for the purpose of identifying the automobile involved, but upon objection by Ewing’s attorney, the report was properly excluded as hearsay. Therefore, there is no evidence in the record to verify the identity of the rented automobile.
In June, 1966, according to the testimony of Cope, Callender was reorganized into a new company which allegedly assumed all its liabilities. Cope testified that the original (or copy) of the automobile rental agreement was sent to Pendleton and that he was unable to find copies in the Cal-lender files. Ewing w^as unable to produce a copy of the rental agreement.
It must be assumed that Callender at some time had possession of the original policy which was issued to it by Fidelity. It was incumbent upon Callender to make proof of insurance coverage of the automobile in question to avoid its own liability to Ewing, from whom it had accepted a fee for insurance coverage. In this respect, there was a conflict of interest between Callender and Fidelity, but at no-time did they plead separately. All pleadings for Callender and Fidelity are jointly made by the same counsel. It is significant that Callender neither produced its insurance policy nor satisfactorily explained its failure to do so. Cope was the only witness for Callender. He testified that to his knowledge he had never seen a copy of the insurance policy and that it was the responsibility of Company President Vernon A. Bulot to handle insurance.
It is a matter of common knowledge that the insured holds the original insurance policy. Whether the insurer keeps a complete duplicate original copy or some other appropriate records, we do not know. No satisfactory explanation was given for failure to account for the original policy, nor was a proper basis laid for the introduction of secondary evidence of its contents. Certainly, Ewing never had the policy, nor any records pertaining to it, but the record does not indicate whether he made any effort through legal process to obtain a copy or specific information of its contents. He cannot claim reliance on third party defendants’ answer that the policy would be produced on trial because that representation was not made until the day of trial.
Counsel for Fidelity and Callender attempted to introduce in evidence an alleged copy of the original liability insurance policy to which Ewing’s counsel objected. He insisted upon production of the original. Counsel then sought permission of the court to obtain the original policy and file it later, with leave to substitute a verified copy. The following exchange is significant:
“MR. NELSON: Is the court going to give me leave to introduce the original?
“THE COURT: You have introduced the original and I will permit it.”
The insurance agency representative was then asked if the policy issued to Callender covered certain named vehicles, to which objection was made by Ewing’s counsel with the following exchange:
“THE COURT: Mr. Nelson, the policy speaks for itself. He doesn’t kno-w. That’s a legal question. Where is the policy?
“MR. NELSON: Your Honor, I have the policy right here. Counsel wants *523 the original. I have a certified copy of it. If he’s go-ing to object to a copy.
“THE COURT: You already introduced the original in the record.
“MR. NELSON: No, sir, I have a certified copy.
“THE COURT: You said you would have the original produced here.
“MR. NELSON: I don’t have it today.
“THE COURT: I understand that. I permitted you to make the offer and to file it later.”
Notwithstanding the foregoing, the trial judge announced from the bench, at the conclusion of the testimony: “I am going to grant judgment against all three parties and judgment in favor of Mr. Ewing.” No other reasons for judgment are recorded.
In reaching its conclusion without waiting for the filing into evidence of the original policy, the court must have been of the opinion that regardless of its contents or lack of coverage, Fidelity was estopped to deny coverage in view of the representations made to Ewing and his reliance thereon.
If the court was of the opinion that Ewing had established a prima facie case of coverage with sufficient proof to shift the burden to Fidelity, we fail to understand why Fidelity was denied the opportunity, reserved to it by the court, to file the policy in evidence.
In either event we cannot concur, nor do we find any basis whatever for granting judgment in favor of the primary plaintiffs against Callender.
The third party plaintiff Ewing did not specifically plead estoppel but he did in substance plead the essential elements. At any rate, the plea could not be sustained by the evidence in this case since it fails to show a reliance on the representations to his detriment. Within six months of the accident — immediately after notice of suit against him and at all times thereafter— Ewing had the services of his own liability insurer’s claims representatives. Many months before trial he and his representatives were aware of the question of coverage, which Fidelity had formally denied by amended answer filed 11 months before trial of the case.
It is rather significant, we think, that Ewing at no time attempted through any legal process to obtain the questionable insurance policy or specific information of its coverage provisions, even though he carried the burden of proof of coverage as against defendant insurer. The interrogatories propounded, particularly interrogatory No. b, quoted above, carefully avoided the categorical question of whether the described Chevrolet automobile or any automobile was covered by a policy of insurance. Apparently Ewing was content to rely on the implications of coverage which might be drawn from the circumstances.
Ewing’s counsel has cited in brief and relies on the authority of several cases which enunciate the principle of law that once a plaintiff has proven the existence of a policy of insurance sued on, the burden shifts to the defendant insurer who seeks to avoid liability to establish the facts upon which it disclaims liability or that its liability is limited or excluded. We fully concur in the authorities cited but do not find them apposite to the situation before us in which the plaintiff Ewing has failed to prove the existence of a policy of insurance covering the automobile in question.
Considered in the most favorable light for Ewing, we hold that the evidence falls short of discharging his burden of proof of coverage to a degree sufficient to shift the burden to Fidelity. If we were of a different opinion, we would be obligated to remand the case to give Fidelity an opportunity to produce proper evidence of the policy coverage provisions in view of the trial court’s granting leave for it to do so, but which Fidelity was precluded from *524 doing by the immediate rendition of judgment.
There is no allegation in plaintiffs’ petition nor is there any evidence in the record to indicate any basis for liability of Callender to plaintiffs Turner and Abraham. There was no privity of contract between them and Ewing’s admitted negligence cannot be imputed to the lessor of the automobile. Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962); Mire v. Fidelity & Casualty Co. of New York, 177 So.2d 588 (La.App. 4th Cir. 1965) ; Villarrubia v. Roy, 162 So.2d 86 (La.App. 4th Cir. 1964).
As between Ewing and Callender, there was privity of contract. Callender accepted a fee from Ewing for the express purpose of providing liability insurance to cover the rented automobile. Callender is liable to Ewing to indemnify him for any loss resulting from its failure to provide the insurance.
The only other issue raised by the appeal relates to the allowance of $283.36 to plaintiff Abraham for damage to his automobile. The argument is made that the damage cannot exceed the value of the automobile which Abraham had recently purchased for $150. There was evidence of some improvement to the car after purchase.
There was no competent evidence introduced in proof of the repair cost of $283. Abraham testified that he obtained an estimate of cost at that figure, which on its face is hearsay and has no probative value. As a matter of fact the automobile was never repaired and remained on the street as junk until finally removed. Abraham’s uncontradicted testimony was that he paid $150 for the automobile in April, 1965 (one month before the accident), and that he spent $50 improving it. We will therefore allow recovery of $200 for the reasonable value of the automobile.
For the foregoing reasons the judgment in favor of Lawrence Paul Turner for the sum of $2,459.82 against defendants W. D. Ewing, Callender Auto Rental, Inc., and Fidelity General Insurance Company, jointly, severally and in solido, is amended to cast only the defendant W. D. Ewing, and as amended it is affirmed.
The judgment in favor of Paul Abraham against W. D. Ewing, Callender Auto Rental, Inc., and Fidelity General Insurance Company, jointly, severally and in solido, is amended by reducing the amount from $283.36 to $200 to cast only the defendant W. D. Ewing, and as amended it is affirmed.
The judgments in favor of plaintiffs Turner and Abraham against defendants Callender Auto Rental, Inc., and Fidelity General Insurance Company are reversed and there shall be judgment in favor of said defendants against plaintiffs Turner and Abraham rejecting their demands and dismissing their suit as to them.
The judgment in favor of third party plaintiff Ewing against third party defendants Callender Auto Rental, Inc., and Fidelity General Insurance Company, jointly, severally and in solido, for the sum of $2,743.18 is amended to reduce the sum to $2,659.82 and to cast only third party defendant Callender Auto Rental, Inc., and as amended it is affirmed. The judgment in favor of third party plaintiff W. D. Ewing against third party defendant Fidelity General Insurance Company is reversed and judgment is now rendered in favor of Fidelity General Insurance Company rejecting the demands of third party petitioner W. D. Ewing. W. D. Ewing and Cal-lander Auto Rental, Inc., are cast in solido for all costs of court.
Amended and affirmed in part; and reversed in part.